1   Laurence D. King (SBN 206423)
    KAPLAN FOX & KILSHEIMER LLP
2   350 Sansome Street, Suite 400
    San Francisco, CA 94104
3   Telephone: 415-772-4700
    Facsimile: 415-772-4707
4   lking@kaplanfox.com

5   Jeffrey P. Campisi
    KAPLAN FOX & KILSHEIMER LLP
6   850 Third Avenue
    New York, NY 10022
7   Telephone: 212-687-1980
    Facsimile: 212-687-7714
8   jcampisi@kaplanfox.com

9   Counsel for Plaintiff

10

11                  UNITED STATES DISTRICT COURT

12              SOUTHERN DISTRICT OF CALIFORNIA

13                                          '10 CV 1959      L    BLM

14  TODD SCHUENEMAN, on behalf of himself and      Case No.
    all others similarly situated,
15                                          CLASS ACTION COMPLAINT
             Plaintiff,
16                                          JURY TRIAL DEMANDED      BY FAX
         vs.
17
    ARENA PHARMACEUTICALS, INC., JACK
18  LIEF, ROBERT E. HOFFMAN, DOMINIC P.
    BEHAN, WILLIAM R. SHANAHAN, and
19  CHRISTY ANDERSON,

20           Defendants.

21

22          Plaintiff, by his undersigned counsel, individually and on behalf of all other persons and

23  entities similarly situated, makes the following allegations, which are based upon the

24  investigation conducted by Plaintiff's counsel, which included, among other things, a review of

25  the public announcements made by defendants, United States Securities and Exchange

26  Commission ("SEC") filings, United States Food and Drug Administration ("FDA") documents,

27  press releases, analyst reports and media reports regarding Arena Pharmaceuticals, Inc.

28  ("Arena" or the "Company").

                                    1                  CLASS ACTION COMPLAINT
                                                       Case No. _____

                                                       **ORIGINAL**

## I.    NATURE OF THE CLAIMS

1.    This is a securities class action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b), and 78t(a), and the rules and regulations promulgated thereunder by the SEC, including Rule 10b-5, 17 C.F.R. §240.10b-5, and under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") on behalf of purchasers of Arena securities between May 11, 2009 through September 16, 2010.

2.    This action concerns Arena's new drug called lorcaserin or Lorqess.  Locaserin is for weight management, including weight loss and maintenance of weight loss.

3.    In December 2009, after completing certain preclinical and clinical trials, Arena submitted a New Drug Application ("NDA") for lorcaserin to the FDA.  The results of drug development, preclinical studies and clinical trials are submitted to the FDA as part of an NDA.

4.    The NDA was important to Arena as the Company does not have any commercially available drugs.

5.    In February 2010, the FDA accepted lorcaserin's NDA for filing and assigned a Prescription Drug User Fee Act ("PDUFA") date of October 22, 2010, for the review of the application.

6.    During the Class Period, the Company represented to investors that lorcaserin's NDA was based on extensive and robust data, and that lorcaserin's combination of efficacy, safety and tolerability would position the drug candidate as first-line therapy for weight management.  But, the Company did not disclose that certain preclinical studies of locaserin found that the drug caused certain cancers in rats.

7.    On September 14, 2010, investors began to learn the truth about lorcaserin.  The FDA disclosed a Briefing Document titled *NDA 22529 Lorqess (lorcaserin hydrochloride) Tablets, 10 mg Sponsor: Arena Pharmaceuticals Advisory Committee – September 16, 2010.*  The Briefing Document included a letter dated August 19, 2010, that disclosed, among other things, the following about the development of cancer in rats treated with lorcaserin:

> Malignancies in Rats: A number of malignant tumor types developed in rats treated with lorcaserin for up to two years. An excess number of malignant mammary tumors developed in female rats treated with lorcaserin at doses within 7-fold of the proposed

2

clinical dose of 10 mg BID. Male rats developed malignant mammary tumors when treated with lorcaserin at doses 17-fold higher than the proposed clinical dose. Although the sponsor believes that lorcaserin-mediated increases in serum prolactin explain the excess risk for malignant breast tumors, *FDA reviewers do not believe that the available data support this hypothesis.* In addition to breast tumors, lorcaserin-treated rats had an excess number of malignant astrocytomas, squamous carcinomas of the subcutis, and malignant schwannomas. There were no imbalances in reports of cancer between lorcaserin and placebo-treated subjects in the phase 3 clinical studies.

\*     \*     \*

The primary hypothesis addressed by the Sponsor was that lorcaserin-induced mammary tumors occurs via a mechanism similar to that demonstrated for compounds with direct or indirect anti-dopaminergic activity, including many approved anti-psychotic medications. Specifically, suppression of dopamine promotes an increase in prolactin levels, which is a known intermediary of mammary tumorigenesis in rodents but of unresolved significance to human breast cancers. *Evidence supporting this pathway in the mechanism of lorcaserin-induced mammary tumors is not persuasive.*

\*     \*     \*

Lorcaserin preferentially partitions to the brain in rats, mice, and monkeys, but the brain-to-plasma ratio varies across the species. Brain partitioning in human subjects was not determined. *Thus, estimating safety margins based on assumptions of partitioning in human subjects is not entirely reliable.*

(Emphasis added).

8.    On September 14, 2010, Arena shares declined from a close on September 13, 2010 of $6.85 per share, to close at $4.13 per share, a decline of $2.71 per share or approximately 40%.

9.    On September 15, 2010, the *Associated Press* issued the following report:

NEW YORK (AP) -- Shares of Arena Pharmaceuticals Inc. fell sharply Wednesday after the Food and Drug Administration raised a caution flag on side effects related to the company's potential obesity drug, lorcaserin.

THE SPARK: An FDA advisory panel is scheduled to review an application for lorcaserin on Thursday. *In briefing documents, concerns were raised about preclinical studies showing high breast tumor rates in lab rats.* Other concerns included results showing minimal weight loss and side effects including heart damage and depression in humans . . . .

THE ANALYSIS: BMO Capital Markets analyst Jason Zhang downgraded Arena shares to "Market Perform" from "Outperform," *citing the potential for a negative recommendation on the drug candidate because of safety issues, including the cancer findings in rats.*

"Although, there is no such findings in the human trials, the FDA reviewers do not agree with Arena's explanation for this finding in rats and state that the risk cannot be dismissed," he said, in a note to investors.  Meanwhile, Barclays analyst Dr. Jim Birchenough reaffirmed an "Underweight" rating on the stock, citing the potential problems with the review panel.

CLASS ACTION COMPLAINT
Case No. _____

(Emphasis added).

10. On September 15, 2010, an analysis titled *Arena Pharmaceuticals's Lorquess: A Briefing Document Analysis* was published by *Seeking Alpha*[α]. The analysis stated, in part, the following:

> Apparently, in the female rat tests of 7 fold increase in treatment (on a circulating mg/kg basis) there was on observation of increased malignant mammary neoplasms. Arena says it's rat specific and the FDA says that they can't prove that because Arena didn't dose mice, monkeys, or people as high as the rats. While the tumors probably are specific to the rats, I agree with the FDA's statement that Arena didn't properly prove that it was, indeed, species specific.
>
> What frustrates me most about this is that the rat tumors never should have been an issue. Run a mouse study at 20x therapeutic dose and close the book on this one. But unfortunately, Arena never took the opportunity to go ahead and prove their assertion. This is a huge failure on the part of Arena. Not properly running the tests to support your conclusion – which they are probably absolutely right on – now means a potential delay in approval and your drug now being tainted with a media-friendly tidbit like 'potential breast cancer'. This is a mistake that will cost the company and stockholders in one way or another and it never should have happened.

11. Another analysis of the Briefing Document stated, in part, the following:

> Yes, and this is a big deal, make no mistake about it. The FDA Deputy Director makes it a point to bring this up on Page 6/270. He writes, "Although the sponsor believes that lorcaserin-mediated increases in serum prolactin explain the excess risk for malignant breast tumors, FDA reviewers do not believe that the available data support this hypothesis." There really isn't much else to say here, I can go through and point out the data on this on 101/270, 104/270, and 106/270, but it will simply highlight as what I see as a rift or central theme throughout the briefing documents between the FDA and the company.
>
> I'll highlight the cancer issue with the worst of the statements that I have seen. On page 87/270 FDA reviewers note that, "However, because the excess mortality observed with lorcaserin was due to drug-induced tumors rather than other toxicity, exposure achieved in the rats did not exceed a maximum tolerated dose, and the relevance of the tumors to human risk cannot be dismissed based on that argument."
>
> Page 93/270 DFA writes that, "The primary hypothesis addressed by the Sponsor was that lorcaserin-induced mammary tumors occurs via a mechanism similar to that demonstrated for compounds with direct or indirect anti-dopaminergic activity, including many approved anti-psychotic medications. Specifically, suppression of dopamine promotes an increase in prolactin levels, which is a known intermediary of mammary tumorigenesis in rodents but of unresolved significance to human breast cancers. Evidence supporting this pathway in the mechanism of lorcaserin-induced mammary tumors is not persuasive."
>
> Furthermore, the FDA reviewer makes sure to note on page (101/ 270) that "Lorcaserin preferentially partitions to the brain in rats, mice, and monkeys, but the brain-to-plasma ratio varies across the species. Brain partitioning in human subjects was not determined. Thus, estimating safety margins based on assumptions of partitioning in human subjects is not entirely reliable."

CLASS ACTION COMPLAINT
Case No. _____

1  All of this is science garble for the FDA saying that they have "no-clue" how it will effect
2  humans.

3  The FDA explicitly notes on several occasions, that they don't even agree with how the
   company performed their analysis in more than one area, not just the rats. I don't like this at
4  all. Because essentially the FDA Advisory Panel is most likely going to agree with the FDA
   reviewers, especially where cancer is a concern. On page 106/270, the FDA directly
5  criticizes the Rat study's design and how it was run, they then further question the company
   on prolactin issue.

6  Furthermore, *the issue becomes a question which the FDA's panel is directed to discuss,*
   *something that I find highly troubling. Not because of the issue itself, more so because it*
7  *appears that the company, in my opinion, knew this issue was on the table and failed to*
   *forewarn investors who have appeared to directly lost money on this.* This makes me lose
8  faith in management's ability to at the very least disclose this matter with investors. The
   matter is serious enough that the advisory panel is directed to discuss this, yet not
9  mentioned in the latest 10-q?

10  (Emphasis added).

11      12.    On September 16, 2010, trading of Arena stock was halted, pending the outcome of
12  the advisory panel hearing.

13      13.    Also on September 16, 2010, the *Wall Street Journal* reported the following:

14  **FDA PANEL REJECTS ARENA'S WEIGHT-LOSS DRUG**

15  WASHINGTON—A federal advisory panel rejected Arena Pharmaceuticals Inc.'s weight-
16  loss drug lorcaserin on concerns the drug didn't work well and carried potential safety
   problems.

17  The Food and Drug Administration's endocrinologic and metabolic drugs advisory
18  committee voted 5 to 9 against a question that asked whether the potential benefits of the
   product outweighed the potential risks of the medication "when used long-term in a
19  population of overweight and obese individuals."

20  The panel's vote amounts to a recommendation that the FDA not approve the drug. The
21  FDA isn't required to follow the advice of its panels—made up of non-FDA medical
   experts—but usually does.

22
   The FDA is expected to make a decision next month on lorcaserin . . . .
23
   Despite the negative vote on lorcaserin, many panel members said the product was
24  promising and encouraged the companies to keep studying the drug to rule out uncertainties.
   One safety problem involved the development of breast tumors in female rats when given a
25  higher dose than would be used in humans. There was no increase an any types of cancer in
   humans studies.
26
   The panel outcome was predicted Tuesday when the FDA posted a fairly negative review of
27  the lorcaserin, sending Arena's shares down about 40%. Trading was halted during
28  Thursday's meeting.

5

CLASS ACTION COMPLAINT
Case No. _____

The FDA said lorcaserin met one of the agency's effectiveness standards "by a slim margin" and failed another. However, the agency requires just one effectiveness standard to be met for approval. FDA said the amount of weight loss seen among patients taking lorcaserin was "relatively low." Patients on lorcaserin lost about 3% more of their body weight compared to patients in the placebo group.

Arena, in a presentation to FDA's panel, said the product produced "clinically significant weight loss" and was safe. The company said lorcaserin helped twice as many patients lose at least 5% of their body weight compared with placebo after one year.

The FDA, also in a presentation to the panel, raised potential safety concerns including heart-valve damage and cancer that couldn't be ruled out from clinical data currently available.

14.     On September 17, 2010, Arena shares declined $1.99 per share or approximately 47%.

## II.     JURISDICTION AND VENUE

15.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act and Section 22 of the Securities Act.

16.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and Section 22 of the Securities Act and 28 U.S.C. §1391(b) and (c).  Substantial acts in furtherance of the wrongs alleged and/or their effects have occurred within this District and Arena maintains its headquarters in San Diego, California.

17.     In connection with the facts and omissions alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.     THE PARTIES

18.     Plaintiff purchased Arena common stock as detailed in the certification attached hereto and was damaged thereby.

19.     Defendant Arena is incorporated in Delaware and has executive offices in San Diego, California.  The Company's stock trades on the Nasdaq under the symbol "ARNA". Arena purports to be a clinical-stage biopharmaceutical company focused on discovering, developing and commercializing oral drugs that target G protein-coupled receptors, an important class of validated drug targets, in four major therapeutic areas: cardiovascular, central nervous system, inflammatory

CLASS ACTION COMPLAINT
Case No. _____

1    and metabolic diseases.

2         20.    Defendant Jack Lief ("Lief") was, at all relevant times, the Company's President

3    and Chief Executive Officer.

4         21.    Defendant Robert E. Hoffman ("Hoffman") was, at all relevant times, the

5    Company's Vice President, Finance and Chief Financial Officer.

6         22.    Defendant Dominic P. Behan ("Behan") was, at all relevant times, the Company's

7    Senior Vice President and Chief Scientific Officer. Behan is one of the Company's founders.

8         23.    Defendant William R. Shanahan ("Shanahan") was, at all relevant times, the

9    Company's Senior Vice President and Chief Medical Officer.

10        24.    Defendant Christy Anderson ("Anderson") was, at all relevant times, the

11   Company's Vice President of Clinical Development.

12        25.    The individuals named as defendants in ¶¶ 20-24 are referred to herein as the

13   "Individual Defendants". The Individual Defendants, because of their positions with the Company,

14   possessed the power and authority to control the contents of Arena's press releases and

15   presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*,

16   the market. Each defendant was provided with copies of the Company's press releases alleged

17   herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to

18   prevent their issuance or cause them to be corrected. Because of their positions and access to

19   material non-public information available to them but not to the public, each of these defendants

20   knew that the adverse facts specified herein had not been disclosed to and were being concealed

21   from the public and that the positive representations which were being made were then materially

22   false and misleading.

23   **IV.    CLASS ACTION ALLEGATIONS**

24        26.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil

25   Procedure 23(a) and 23(b)(3) on behalf of a class of all persons and entities who purchased the

26   publicly traded securities of Arena between May 11, 2009 and September 16, 2010, inclusive,

27   including persons or entities who purchased Arena common stock pursuant and/or traceable to the

28

---

7

CLASS ACTION COMPLAINT
Case No. _____

Company's materially false and misleading registration statements and prospectus supplements during the Class Period (the "Class").

27.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to plaintiff at the present time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members of the Class located throughout the United States.  As of August 5, 2010, Arena had over 112 million shares of common stock outstanding.

28.    Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have sustained damages because of defendants' unlawful activities alleged herein.  Plaintiff has retained counsel competent and experienced in class and securities litigation and intends to pursue this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff.  Plaintiff has no interests which are contrary to or in conflict with those of the Class that plaintiff seeks to represent.

29.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

30.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts and omissions as alleged herein;

(b)    whether defendants misstated and/or omitted to state material facts in their public statements and filings with the SEC;

(c)    whether defendants participated directly or indirectly in the course of conduct complained of herein; and

(d)    whether the members of the Class have sustained damages and the proper measure of such damages.

CLASS ACTION COMPLAINT
Case No. _____

## V.    FALSE AND MISLEADING STATEMENTS

31.    On May 11, 2009, Arena issued a press release in which it disclosed its financial results for the quarter ended March 31, 2009. The press release stated, in part, the following:

**Arena Pharmaceuticals Announces First Quarter 2009 Financial Results**

SAN DIEGO, May 11, 2009 /PRNewswire-FirstCall via COMTEX News Network/ -- Arena Pharmaceuticals, Inc. (Nasdaq: ARNA) today reported financial results for the first quarter ended March 31, 2009 . . . .

"Receiving the positive lorcaserin BLOOM results was a significant milestone for Arena, and we are focusing our financial, management and development resources on completing the lorcaserin BLOSSOM trial on schedule and submitting our New Drug Application for lorcaserin by the end of the year," stated Jack Lief, Arena's President and Chief Executive Officer. . . .

"As previously announced, during the first year of the BLOOM trial, 47.5% of lorcaserin patients lost 5% or more of their body weight from baseline, compared to 20.3% in the placebo group, exceeding the efficacy benchmark in the most recent FDA draft guidance," stated William R. Shanahan, M.D., Arena's Vice President and Chief Medical Officer. "Patients on lorcaserin rapidly lost a medically important amount of weight in a well-tolerated manner, with about one-third losing at least 5% of their body weight in only eight weeks. Lorcaserin helped nearly half of the patients to lose at least 5% of their body weight, and nearly a quarter to lose 10% or more of their body weight. We look forward to presenting these and additional data at the upcoming American Diabetes Association meeting in June." . . . .

Arena's First Quarter and Recent Developments

- Abstract accepted for presentation of data from BLOOM (Behavioral modification and Lorcaserin for Overweight and Obesity Management), the first of two pivotal trials evaluating the safety and efficacy of lorcaserin for weight management, at the 69th Scientific Sessions of the American Diabetes Association scheduled for June 5-9, 2009 in New Orleans, Louisiana.

- Announced positive top-line results from BLOOM. Lorcaserin was highly efficacious, achieving statistical significance (p<0.0001 vs. placebo) on all three co-primary efficacy endpoints (>5% categorical, absolute, and >10% categorical weight loss). The BLOOM results also satisfy the efficacy benchmark in the most recent US Food and Drug Administration, or FDA, draft guidance for the development of drugs for weight management. Treatment with lorcaserin was generally very well tolerated. Lorcaserin treatment for up to two years was not associated with evidence of heart valve damage; rates for the development of echocardiographic FDA-defined valvulopathy were similar to placebo throughout the study. Arena is on track to report results from the second pivotal trial, BLOSSOM (Behavioral modification and Lorcaserin Second Study for Obesity Management), by the end of September 2009.

CLASS ACTION COMPLAINT
Case No. _____

32.     On May 11, 2009, the Company filed its quarterly report with the SEC on Form 10-Q for the period ended March 31, 2009. The 10-Q was signed by Defendants Lief and Hoffman, stated, in part, the following:

**OVERVIEW AND RECENT DEVELOPMENTS**

We are a clinical-stage biopharmaceutical company focused on discovering, developing and commercializing oral drugs in four major therapeutic areas: cardiovascular, central nervous system, inflammatory and metabolic diseases. Our most advanced drug candidate, lorcaserin hydrochloride, or lorcaserin, is being investigated in a Phase 3 clinical trial program for weight management.

\*       \*       \*

**\*The results of preclinical studies and completed clinical trials are not necessarily predictive of future results, and our current drug candidates may not have favorable results in later studies or trials.**

Preclinical studies and Phase 1 and Phase 2 clinical trials are not primarily designed to test the efficacy of a drug candidate, but rather to test safety, to study pharmacokinetics and pharmacodynamics, and to understand the drug candidate's side effects at various doses and schedules. To date, long-term safety and efficacy have not yet been demonstrated in clinical trials for any of our drug candidates, except lorcaserin.

33.     On June 6, 2009, the Company issued a press release that stated, in part, the following:

**Arena Pharmaceuticals Announces Lorcaserin Data Demonstrating Highly Significant Categorical and Absolute Weight Loss and Improvements in Secondary Endpoints Associated with Cardiovascular Risk**

*-- Late-Breaking Data from Pivotal BLOOM Trial Presented at the American Diabetes Association's 69th Scientific Sessions Expand on Previously Announced Positive Top-Line Results -*

NEW ORLEANS, June 6, 2009 /PRNewswire-FirstCall via COMTEX News Network/ -- Arena Pharmaceuticals, Inc. (Nasdaq: ARNA) announced today a late-breaking poster presentation of positive results from BLOOM (Behavioral modification and Lorcaserin for Overweight and Obesity Management), the first of two pivotal trials evaluating the safety and efficacy of lorcaserin for weight management, at the American Diabetes Association's 69th Scientific Sessions. Lorcaserin patients achieved highly significant categorical and absolute weight loss in Year 1, and continued treatment with lorcaserin in Year 2 helped significantly more patients maintain their weight loss as compared to those on placebo. Treatment with lorcaserin also resulted in highly significant improvements as compared to placebo in multiple secondary endpoints associated with cardiovascular risk. Lorcaserin did not result in increased risk of depression and was not associated with the development of cardiac valvular insufficiency.

Previously announced BLOOM data demonstrated that lorcaserin was highly efficacious, achieving statistical significance on all three co-primary efficacy endpoints, and was very well tolerated. The BLOOM results also satisfy the efficacy requirement in the most recent

10                         CLASS ACTION COMPLAINT
                           Case No. _____

US Food and Drug Administration, or FDA, draft guidance for the development of drugs for weight management . . . .

"Given the positive lorcaserin BLOOM results, we are focused on partnering efforts and realizing lorcaserin's significant commercial potential," stated Jack Lief, Arena's President and Chief Executive Officer.

34.     On July 8, 2009, the Company issued 12,500,000 shares of its common stock at a public offering price of $4.17 per share pursuant to a prospectus supplement and registration statement filed with the SEC on Form 424(b)(5) on July 8, 2009.  The registration statement was signed by Defendants Lief, Hoffman and Behan.  The prospectus supplement stated, in part, the following:

We are focused on discovering, developing and commercializing oral drugs in four major therapeutic areas: cardiovascular, central nervous system, inflammatory and metabolic diseases. Our lead drug candidate, lorcaserin hydrochloride, or lorcaserin, is being investigated in a Phase 3 clinical trial program for the treatment of obesity . . . .

In September 2006, we initiated the first of two pivotal Phase 3 clinical trials evaluating the efficacy and safety of lorcaserin. The pivotal Phase 3 clinical trials are the trials we believe are necessary to support a new drug application, or NDA, for lorcaserin. The first pivotal trial, known as BLOOM (Behavioral modification and Lorcaserin for Overweight and Obesity Management), is a two-year, randomized, doubleblind and placebo-controlled trial that enrolled 3,181 overweight and obese patients. In December 2007, we initiated the second pivotal trial, BLOSSOM (Behavioral modification and Lorcaserin Second Study for Obesity Management). The BLOSSOM trial is a one-year, randomized, double-blind and placebo-controlled trial that enrolled 4,008 overweight and obese patients. In addition to our pivotal trials, we have a lorcaserin Phase 3 clinical trial called BLOOM-DM (Behavioral modification and Lorcaserin for Overweight and Obesity Management in Diabetes Mellitus), which is a one-year, randomized, double-blind and placebo-controlled trial that is expected to enroll approximately 600 obese patients with type 2 diabetes. Assuming positive data from BLOOM and BLOSSOM, we plan to file a New Drug Application, or NDA, with the United States Food and Drug Administration, or FDA, by the end of 2009.

35.     On August 3, 2009, the Company issued a press release in which it disclosed its financial results for the quarter ended June 30, 2009.  The press release stated, in part, the following:

**Arena Pharmaceuticals Announces Second Quarter 2009 Financial Results and Recent Developments**

SAN DIEGO, Aug. 3, 2009/PRNewswire-FirstCall via COMTEX News Network/ -- Arena Pharmaceuticals, Inc. (Nasdaq: ARNA) today reported financial results for the second quarter ended June 30, 2009 . . . .

"We are on track to announce results from the BLOSSOM trial in September, which we expect will be the final piece of lorcaserin's NDA that we plan to submit by the end of this year," stated Jack Lief, Arena's President and Chief Executive Officer. "Based on its

11

emerging efficacy, safety and tolerability profile, lorcaserin has the potential to be an important new treatment option for patients needing to better manage their weight and improve their overall health. Our improved financial position strengthens our ability to obtain marketing approval for lorcaserin and our position in partnership discussions."

36.     On August 7, 2009, the Company filed its quarterly report with the SEC on Form 10-Q for the period ended June 30, 2009. The 10-Q was signed by Defendants Lief and Hoffman, stated, in part, the following:

**OVERVIEW AND RECENT DEVELOPMENTS**

We are a clinical-stage biopharmaceutical company focused on discovering, developing and commercializing oral drugs in four major therapeutic areas: cardiovascular, central nervous system, inflammatory and metabolic diseases. Our most advanced drug candidate, lorcaserin hydrochloride, or lorcaserin, is being investigated in a Phase 3 clinical trial program for weight management . . . .

Our recent developments include:

• Completed dosing in all clinical trials expected to be included in the planned New Drug Application, or NDA, submission for lorcaserin. We plan to report results from BLOSSOM (Behavioral modification and Lorcaserin Second Study for Obesity Management), the second of two pivotal trials evaluating the safety and efficacy of lorcaserin for weight management, in September 2009.

• Completed enrollment in BLOOM-DM (Behavioral modification and Lorcaserin for Overweight and Obesity Management in Diabetes Mellitus), a one-year study evaluating lorcaserin in obese and overweight patients with type 2 diabetes. Results from BLOOM-DM will be submitted as a supplement to the lorcaserin NDA filing.

• Announced a late-breaking poster presentation of positive results from BLOOM (Behavioral modification and Lorcaserin for Overweight and Obesity Management), the first of two pivotal trials evaluating the safety and efficacy of lorcaserin for weight management, at the 69 Scientific Sessions of the American Diabetes Association . . . . Lorcaserin patients achieved highly significant categorical and absolute weight loss in Year 1, and continued treatment with lorcaserin in Year 2 helped significantly more patients maintain their weight loss as compared to those on placebo. 66.4% of lorcaserin patients who completed one year of treatment according to the trial's protocol lost at least 5% of their weight and the average weight loss in this responder population was 26 pounds. Treatment with lorcaserin also resulted in highly significant improvements as compared to placebo in multiple secondary endpoints associated with cardiovascular risk. Lorcaserin was very well tolerated, did not result in increased risk of depression and was not associated with development of cardiac valvular insufficiency.

37.     On September 18, 2009, the Company issued a press release that stated, in part, the following:

CLASS ACTION COMPLAINT
Case No. _____

**Arena Pharmaceuticals Reports Positive, Highly Significant BLOSSOM Trial Results for Weight Management; NDA Submission on Track for December**

- *Lorcaserin Meets all Primary Endpoints and FDA Benchmark* -
- *63% of Lorcaserin Patients Who Complied with the Protocol Lost at Least 5% of Their Weight*
- *Lorcaserin Patients in the Top Quartile Achieved Average Weight Loss of 16% or 35 Pounds*
- *Combined Phase 3 BLOOM and BLOSSOM Data Set Confirms Lorcaserin's Excellent Safety and Tolerability Profile and Rules Out Heart Valve Effect* -
- *Conference Call and Webcast Presentation Scheduled for 8:00 a.m. ET on September 18, 2009* -

SAN DIEGO, Sept 18, 2009 /PRNewswire-FirstCall via COMTEX News Network/ -- Arena Pharmaceuticals, Inc. (Nasdaq: ARNA) reported today positive, highly significant top-line results from the BLOSSOM (Behavioral modification and LOrcaserin Second Study for Obesity Management) trial. BLOSSOM confirms the results previously reported for the BLOOM (Behavioral modification and Lorcaserin for Overweight and Obesity Management) trial and completes the lorcaserin Phase 3 pivotal registration program of 7,190 patients evaluated for up to two years. Arena plans to submit a New Drug Application, or NDA, for lorcaserin to the US Food and Drug Administration, or FDA, in December.

In the one-year BLOSSOM trial, lorcaserin met all primary efficacy and safety endpoints. Patients achieved highly significant categorical and absolute weight loss. Lorcaserin was very well tolerated and was not associated with depression or suicidal ideation. The integrated echocardiographic data set from BLOSSOM and BLOOM rules out a risk of valvulopathy in lorcaserin patients according to criteria requested by the FDA. Treatment with lorcaserin also resulted in significant improvements as compared to placebo in multiple secondary endpoints associated with cardiovascular risk.

38.     On October 25, 2009, the Company issued a press release that stated, in part, the following:

**Positive Data from Arena Pharmaceuticals' Pivotal BLOOM Trial Demonstrate that Lorcaserin Significantly Improved Markers of Cardiovascular Risk and Glycemic Parameters and was not Associated with Depression or Suicidal Ideation**

- *Data Presented at the 27th Annual Scientific Meeting of The Obesity Society Expand on Previously Announced Highly Significant Results* -
- *Lorcaserin Patients Lost About One-Third of Their Excess Weight* -

WASHINGTON, Oct 25, 2009 /PRNewswire-FirstCall via COMTEX News Network/ -- Arena Pharmaceuticals, Inc. (Nasdaq: ARNA) reported that data from the pivotal BLOOM (Behavioral modification and Lorcaserin for Overweight and Obesity Management) Phase 3 trial demonstrate lorcaserin significantly increased excess weight loss, improved markers of cardiovascular risk and glycemic parameters, and was not associated with depression or suicidal ideation. Additional subgroup analyses showed that lorcaserin caused the greatest improvements in lipid profiles, glycemic parameters and other markers of cardiovascular risk in patients in the highest risk categories. The new data were presented at Obesity 2009, the 27th Annual Scientific Meeting of The Obesity Society.

CLASS ACTION COMPLAINT
Case No. _____

"There is an enormous unmet need for new weight management treatments to help address the obesity epidemic. If approved, lorcaserin's unique combination of efficacy, safety and tolerability will make it suitable as first-line therapy for weight management," said Steven R. Smith, M.D., Executive Director of the Florida Hospital Translational Research Institute for Metabolism and Diabetes. "Based on the results from lorcaserin's pivotal program, physicians and patients can expect treatment with lorcaserin, along with a lifestyle modification program, to result in average weight loss of nearly 20 pounds and a significant reduction in their excess weight over one year, while improving important risk factors and quality of life. Lorcaserin was very well tolerated; the most common side effect was mild and transient headache early in treatment."

39.    On November 9, 2009, the Company issued a press release that stated, in part, the following:

**Arena Pharmaceuticals Announces Third Quarter 2009 Financial Results and Recent Developments**

SAN DIEGO, Nov 09, 2009 /PRNewswire-FirstCall via COMTEX News Network/ -- Arena Pharmaceuticals, Inc. (Nasdaq: ARNA) today reported financial results for the third quarter ended September 30, 2009 . . . .

"The successful completion of the lorcaserin pivotal program in the third quarter was a critical milestone for Arena," stated Jack Lief, Arena's President and Chief Executive Officer. "The positive results were received with support and enthusiasm at The Obesity Society's annual meeting last month. Participating physicians shared with us three clear themes: the pressing need for new weight management treatments, the paramount importance of safety in treating overweight and obese patients, and that weight reduction should translate into improvements in cardiometabolic health. If approved, the unique combination of efficacy, safety and tolerability positions lorcaserin as first-line therapy."

40.    On August 7, 2009, the Company filed its quarterly report with the SEC on Form 10-Q for the period ended June 30, 2009.  The 10-Q was signed by Defendants Lief and Hoffman, stated, in part, the following:

**OVERVIEW AND RECENT DEVELOPMENTS**

We are a clinical-stage biopharmaceutical company focused on discovering, developing and commercializing oral drugs in four major therapeutic areas: cardiovascular, central nervous system, inflammatory and metabolic diseases. Our most advanced drug candidate, lorcaserin hydrochloride, or lorcaserin, is being investigated in a Phase 3 clinical trial program for weight management.

       *        *        *

Preclinical studies and Phase 1 and Phase 2 clinical trials are not primarily designed to test the efficacy of a drug candidate, but rather to test safety, to study pharmacokinetics and pharmacodynamics, and to understand the drug candidate's side effects at various doses and schedules. To date, long-term safety and efficacy have not yet been demonstrated in clinical trials for any of our drug candidates, except lorcaserin.

14

CLASS ACTION COMPLAINT
Case No. _____

1

41.    On December 22, 2009, Arena submitted a New Drug Application to the FDA for

2    lorcaserin for weight management.  On December 22, 2009, the Company issued a press release

3    that stated, in part, the following:

4    **Arena Pharmaceuticals Submits New Drug Application to FDA for Lorcaserin for**
     **Weight Management**

5
     SAN DIEGO, Dec 22, 2009 /PRNewswire-FirstCall via COMTEX News Network/ --
6    Arena Pharmaceuticals, Inc. (Nasdaq: ARNA) announced today that it has submitted a
     New Drug Application (NDA) to the US Food and Drug Administration (FDA) for
7    lorcaserin, Arena's internally discovered and developed drug candidate for weight
     management, including weight loss and maintenance of weight loss. The submission is
8    based on an extensive data package from lorcaserin's clinical development program that
     includes 18 clinical trials totaling 8,576 patients.
9
     William R. Shanahan, M.D., Arena's Vice President and Chief Medical Officer, stated,
10   "Physicians need new, better-tolerated approaches to improve the treatment of patients who
     are obese or significantly overweight. Based on the robust data package we submitted to
11   the FDA, lorcaserin has the potential to meet this need, offering patients the opportunity to
     achieve sustainable weight loss in a well-tolerated manner and improve their
12   cardiometabolic health and quality of life."

13   The pivotal Phase 3 clinical trial program, BLOOM (Behavioral modification and
     Lorcaserin for Overweight and Obesity Management) and BLOSSOM (Behavioral
14   modification and LOrcaserin Second Study for Obesity Management), evaluated nearly
     7,200 patients treated for up to two years and showed that lorcaserin consistently produced
15   significant weight loss with excellent safety and tolerability.

16   "Today's NDA submission is an important milestone towards realizing lorcaserin's
     significant commercial potential, and we are excited by the possibility of bringing
17   lorcaserin to patients who need help in managing their weight," said Jack Lief, Arena's
     President and Chief Executive Officer. "Physician feedback suggests that, if approved,
18   lorcaserin's combination of efficacy, safety and tolerability will position the drug candidate
     as first-line therapy for weight management."

19

20   42.    On February 24, 2010, the Company disclosed that its NDA Drug Application

21   (NDA) for lorcaserin had been accepted for filing by the FDA.  The Company issued a press

22   release that stated, in part, the following:

23   **Arena Pharmaceuticals Announces FDA Acceptance of Lorcaserin NDA for Filing**

24
     SAN DIEGO, Feb. 24, 2010 /PRNewswire via COMTEX News Network/ -- Arena
25   Pharmaceuticals, Inc. (Nasdaq: ARNA) announced today that its New Drug Application
     (NDA) for lorcaserin, Arena's internally discovered and developed drug candidate for
26   weight management, including weight loss and maintenance of weight loss, has been
     accepted for filing by the US Food and Drug Administration (FDA). Arena submitted the
27   lorcaserin NDA on December 22, 2009, and expects to learn the Prescription Drug User Fee
     Act (PDUFA) date in the next few weeks. The PDUFA date is the target date for the FDA
28   to complete its review of an NDA.

15                        CLASS ACTION COMPLAINT
                          Case No. _____

1

2

3

> "The FDA's acceptance of the lorcaserin NDA is a significant milestone towards our goal of providing physicians and their patients with a new mechanistic approach to achieve sustainable weight loss in a well-tolerated manner," said Jack Lief, Arena's President and Chief Executive Officer. "We look forward to working with the FDA to facilitate a thoughtful and efficient review of the lorcaserin NDA."

4

5

6

7

> The NDA is based on a data package from lorcaserin's development program that includes 18 clinical trials totaling 8,576 patients. The pivotal Phase 3 clinical trial program, BLOOM (Behavioral modification and Lorcaserin for Overweight and Obesity Management) and BLOSSOM (Behavioral modification and LOrcaserin Second Study for Obesity Management), evaluated nearly 7,200 patients treated for up to two years. In both trials, lorcaserin produced statistically significant weight loss with excellent safety and tolerability.

8

9

10

11

12

43.     On March 8, 2010, the Company issued 8,278,432 shares of common stock to Azimuth Opportunity Ltd. at a price of $2.96 per share pursuant to a registration statement and prospectus supplement dated March 23, 2010 filed with the SEC on Form 424(b)(5).   The registration statement and prospectus supplement was signed by Defendants Lief, Behan and Hoffman and stated, in part, the following:

13

14

15

16

> Our most advanced drug candidate, lorcaserin, is intended for weight management, including weight loss and maintenance of weight loss, and has completed a pivotal Phase 3 clinical trial program. We have submitted a New Drug Application, or NDA, for lorcaserin to the U.S. Food and Drug Administration, or FDA, and the FDA has assigned an October 22, 2010 Prescription Drug User Fee Act, or PDUFA, date for the review of the application.

17

18

19

44.     On March 12, 2010, the Company conducted a conference call with investors. During the conference call, the Company was asked whether the FDA raised any questions concerning the Company's NDA for loraserin:

20

21

22

> **Thomas Wei** - *Jefferies - Analyst*
>
> I had a question actually on the regulatory process so far for lorcaserin. Can you share with us any of the questions or issues that were raised in the 74-day letter from the FDA that you must have just gotten from them?

23

24

25

26

> **Jack Lief** - *Arena Pharmaceuticals - Chairman, CEO & President*
>
> Well, we typically do not go into the details of FDA correspondence. Having said that, we are confident that we have the ability to work with the FDA in the future during their review of the NDA, and I think we will be able to satisfy if there are any questions that they might have in the future. Dominic, do you have anything to add?

27

28

> **Dominic Behan** - *Arena Pharmaceuticals - Co-Founder, Director, SVP & Chief Scientific Officer*
>
> I don't think I have. Thank you.

16

CLASS ACTION COMPLAINT
Case No. _____

45.    On March 16, 2010, the Defendants caused Arena to file its annual report with the SEC on Form 10-K for the year ended December 31, 2009.  The 10-K, which was signed by Defendants Lief, Hoffman and Behan, stated, among other things, the following:

> Our most advanced drug candidate is lorcaserin hydrochloride, or lorcaserin, for weight management, which has completed a pivotal Phase 3 clinical trial program. In December 2009, we submitted a New Drug Application, or NDA, for lorcaserin to the US Food and Drug Administration, or FDA, for regulatory approval, and the FDA has assigned an October 22, 2010 Prescription Drug User Fee Act, or PDUFA, date for their review of our application. Recent developments include:
>
> **Lorcaserin**
>
> • Submitted an NDA for lorcaserin and the FDA has assigned a PDUFA date of October 22, 2010 for review of our application. The NDA is based on a data package from lorcaserin's development program that includes 18 clinical trials totaling 8,576 patients. The pivotal Phase 3 clinical trial program, BLOOM (Behavioral modification and Lorcaserin for Overweight and Obesity Management) and BLOSSOM (Behavioral modification and LOrcaserin Second Study for Obesity Management), evaluated nearly 7,200 patients treated for up to two years. In both trials, lorcaserin produced highly statistically significant weight loss with excellent safety and tolerability.
>
> \*      \*      \*
>
> **The results of preclinical studies and completed clinical trials are not necessarily predictive of future results, and our current drug candidates may not have favorable results in later studies or trials.**
>
> Preclinical studies and Phase 1 and Phase 2 clinical trials are not primarily designed to test the efficacy of a drug candidate, but rather to test safety, to study pharmacokinetics and pharmacodynamics, and to understand the drug candidate's side effects at various doses and schedules. To date, long-term safety and efficacy have not yet been demonstrated in clinical trials for any of our drug candidates, except lorcaserin.

46.    On May 7, 2010, the Company filed its quarterly report with the SEC on Form 10-Q for the period ended March 31, 2010.  The 10-Q was signed by Defendants Lief and Hoffman, stated, in part, the following:

> **OVERVIEW AND RECENT DEVELOPMENTS**
>
> Our most advanced drug candidate, lorcaserin hydrochloride or lorcaserin, is intended for weight management and has completed a pivotal Phase 3 clinical trial program. We have filed a New Drug Application, or NDA, for lorcaserin with the US Food and Drug Administration, or FDA. The FDA has assigned a Prescription Drug User Fee Act, or PDUFA, date of October 22, 2010 for the review of the lorcaserin NDA, and scheduled an Endocrinologic and Metabolic Drugs Advisory Committee meeting on September 16, 2010 as part of such review.
>
> Our recent developments include:

CLASS ACTION COMPLAINT
Case No. _____

• The FDA accepted our NDA for lorcaserin and assigned a PDUFA date of October 22, 2010 for review of the application. The NDA is based on a data package from lorcaserin's development program that includes 18 clinical trials totaling 8,576 patients. The pivotal Phase 3 clinical trials, BLOOM and BLOSSOM, evaluated nearly 7,200 patients treated for up to two years. In both trials, lorcaserin produced highly statistically significant weight loss with excellent safety and tolerability.

\*       \*       \*

**The results of preclinical studies and completed clinical trials are not necessarily predictive of future results, and our current drug candidates may not have favorable results in later studies or trials.**

Preclinical studies and Phase 1 and Phase 2 clinical trials are not primarily designed to test the efficacy of a drug candidate, but rather to test safety, to study pharmacokinetics and pharmacodynamics, and to understand the drug candidate's side effects at various doses and schedules. To date, long-term safety and efficacy have not yet been demonstrated in clinical trials for any of our drug candidates, except lorcaserin.

47.     On July 1, 2010, the Company issued a press release announcing a marketing and supply agreement with Eisai Inc. The press release stated, in part, the following:

**Eisai to Market Arena Pharmaceuticals' Lorcaserin for Obesity and Weight Management in U.S. Following FDA Approval**

*Companies Sign Marketing and Supply Agreement; Arena Eligible to Receive Over 30% of Eisai's Net Sales and $1.37 Billion in Other Payments –*

SAN DIEGO, July 1, 2010 /PRNewswire via COMTEX News Network/ -- Arena Pharmaceuticals, Inc. (Nasdaq: ARNA) today announced that Eisai Inc. will market lorcaserin for obesity and weight management in the United States following U.S. Food and Drug Administration (FDA) approval under the terms of a marketing and supply agreement between Arena Pharmaceuticals GmbH, a wholly owned subsidiary of Arena Pharmaceuticals, Inc., and Eisai. Lorcaserin, which Arena discovered and has developed for weight management, is intended for obese patients as well as overweight patients who have at least one weight-related co-morbid condition. . . .

"Execution of this commercial agreement is a major milestone in our plans for lorcaserin," said Jack Lief, Arena's President and Chief Executive Officer. "We believe in Eisai's *human health care* mission to satisfy unmet medical needs and increase benefits to patients and their families. With Eisai, we have the right company to market lorcaserin in the United States, the right type of agreement to optimize lorcaserin's medical and commercial potential and the shared recognition that it is the right time to enter into this agreement to prepare for launch following FDA approval."

48.     Also on July 1, 2010, the Company conducted a conference call with investors to discuss the marketing and sales agreement. During the conference call, the following statements were made:

**Jack Lief** - *Arena Pharmaceuticals Inc. - President and CEO*

18                    CLASS ACTION COMPLAINT
                      Case No. _____

1    We look forward to continued interaction with the FDA to complete its review of the
     Lorcaserin new drug applications. As a reminder, we are preparing for our tentatively
2    scheduled advisory committee meeting on September 16. This meeting precedes our
     October 22 PDUFA date.
3

4           49.    On July 14, 2010, the Company issued a press release concerning the publication of

5    the results of two Phase-III studies in the New England Journal of Medicine. The press release

6    stated, in part, the following;

7           **New England Journal of Medicine Publishes Results of Two-Year BLOOM Trial
            Showing Lorcaserin Caused Significant Weight Loss and Improved Maintenance of**
8           **Weight Loss**

9           *Lorcaserin Also Improved Values for Biomarkers That May be Predictors of Future
            Cardiovascular Events*
10

11          SAN DIEGO and WOODCLIFF LAKE, N.J., July 14, 2010 /PRNewswire via COMTEX
            News Network/ -- Arena Pharmaceuticals, Inc. (Nasdaq: ARNA) and Eisai Inc. today
12          announced that results from the two-year BLOOM (Behavioral modification and Lorcaserin
            for Overweight and Obesity Management) trial will be published in the July 15, 2010, issue
13          of the *New England Journal of Medicine*. The data presented in the article show that
            lorcaserin used in conjunction with behavioral modification caused significantly greater
14          weight loss and improved maintenance of weight loss compared to placebo. Lorcaserin also
            improved values for biomarkers that may be predictive of future cardiovascular events,
15          including lipid levels, insulin resistance, levels of inflammatory markers and blood pressure
            . . . .
16          "We have reached another major milestone for Arena with publication of the BLOOM
            results in the *New England Journal of Medicine*," said Jack Lief, Arena's President and
17          Chief Executive Officer. "We look forward to continued execution of our plans for
            lorcaserin and interaction with the FDA as it conducts its review of the NDA."
18

19          50.    On August 3, 2010, when the Company issued a press release that disclosed its

20   financial results for the quarter ended June 30, 2010.   The press release stated, in part, the

21   following:

22          **Arena Pharmaceuticals Announces Second Quarter 2010 Financial Results and
            Recent Developments**
23
            *FDA Completes Successful Pre-Approval Inspection of Arena's Swiss Manufacturing*
24          *Facility*

25          **San Diego, CA, August 3, 2010** - Arena Pharmaceuticals, Inc. (NASDAQ: ARNA) today
            reported financial results for the second quarter ended June 30, 2010, and recent
26          developments, including the successful Pre-Approval Inspection, or PAI, of the company's
            Swiss drug product manufacturing facility by the US Food and Drug Administration, or
27          FDA.

28

                                                    19          CLASS ACTION COMPLAINT
                                                                Case No. _____

"We have recently achieved a number of important milestones, including the establishment of an agreement with Eisai for the commercialization of lorcaserin in the US, the successful completion of the FDA's pre-approval inspection of our Swiss manufacturing facility and the publication of our BLOOM trial results in the *New England Journal of Medicine*," stated Jack Lief, Arena's President and Chief Executive Officer. "We are continuing to execute on our plans for lorcaserin as we prepare for the September FDA advisory committee meeting and potential regulatory approval." . . . .

**Arena's Recent Developments** . . . .

- Results from the two-year, pivotal Phase 3 BLOOM (Behavioral modification and Lorcaserin for Overweight and Obesity Management) trial were published in the July 15, 2010, issue of the *New England Journal of Medicine*. The data presented in the article show that lorcaserin used in conjunction with behavioral modification caused significantly greater weight loss and improved maintenance of weight loss compared to placebo. Lorcaserin also improved values for biomarkers that may be predictive of future cardiovascular events, including lipid levels, insulin resistance, levels of inflammatory markers and blood pressure.

- The FDA notified Arena of the tentative scheduling of an Endocrinologic and Metabolic Drugs Advisory Committee meeting on September 16, 2010, for the review of the lorcaserin New Drug Application, or NDA.

- At the American Diabetes Association's 70th Scientific Sessions, pooled Week 52 data from lorcaserin's pivotal Phase 3 clinical trial program were presented. Data from over 6,000 patients show that more than twice as many lorcaserin patients (47.1%) achieved at least 5% body weight loss compared to placebo (22.6%) using Intent-to-Treat with Last Observation Carried Forward analysis. Lorcaserin reduced body weight in all patient subgroups evaluated, as defined by gender, age, ethnicity, starting body weight and starting Body Mass Index, or BMI. Greater improvements in cardiovascular risk factors were also achieved with lorcaserin treatment compared to placebo overall and in most subgroups. Patients in both the lorcaserin and placebo groups who decreased their body weight by at least 5% achieved more favorable changes in lipid parameters, glycemic parameters, blood pressure and high sensitivity C-reactive protein as compared to those who had less than 5% weight loss. Greater improvements in these cardiovascular risk factors were also achieved by patients who entered the studies with values indicative of elevated risk.

51.    On August 5, 2010, the Company issued 8,955,224 shares of common stock to certain institutional investors at a price of $6.70 per share pursuant to a registration statement and prospectus supplement dated August 5, 2010 filed with the SEC on Form 424(b)(5). The registration statement and prospectus supplement was signed by Defendants Lief, Behan and Hoffman and stated, in part, the following:

In December 2009, we submitted a New Drug Application, or NDA, for lorcaserin to the US Food and Drug Administration, or FDA, for regulatory approval. The FDA has assigned an October 22, 2010, Prescription Drug User Fee Act, or PDUFA, date for the review of our application, and has notified us of the tentative scheduling of an Endocrinologic and Metabolic Drugs Advisory Committee meeting on September 16, 2010, as part of such review. Arena Pharmaceuticals GmbH, or Arena GmbH, our wholly owned subsidiary, has granted Eisai Inc., or Eisai, exclusive rights to market and distribute lorcaserin in the United

CLASS ACTION COMPLAINT
Case No. _____

States and its territories and possessions following approval by the FDA of our lorcaserin NDA.

52.    On August 6, 2010, the Company issued a press release concerning the FDA advisory meeting.  The press release stated, in part, the following:

**FDA Confirms September 16th Advisory Committee Meeting to Review Lorcaserin for Obesity and Weight Management**

SAN DIEGO and WOODCLIFF LAKE, N.J., Aug. 6, 2010 /PRNewswire via COMTEX News Network/ -- Arena Pharmaceuticals, Inc. (Nasdaq: ARNA) and Eisai Inc. announced today that the US Food and Drug Administration (FDA) has notified the company of the confirmed scheduling of an Endocrinologic and Metabolic Drugs Advisory Committee meeting on September 16, 2010, for the review of the lorcaserin New Drug Application (NDA). Lorcaserin, which Arena discovered and has developed for weight management, is intended for obese patients as well as overweight patients who have at least one weight-related co-morbid condition.

"Our primary objective at this time is to obtain FDA approval of lorcaserin," said Jack Lief, Arena's President and Chief Executive Officer. "We have been preparing for this anticipated Advisory Committee meeting, and look forward to reviewing lorcaserin's profile with the panel members."

Arena submitted the lorcaserin NDA on December 22, 2009, and the FDA assigned a PDUFA date, the target date for the agency to complete its review of the application, of October 22, 2010.

**Lorcaserin New Drug Application**

The lorcaserin New Drug Application is based on a data package from lorcaserin's development program that includes 18 clinical trials totaling 8,576 patients. The pivotal Phase 3 clinical trial program, BLOOM (Behavioral modification and Lorcaserin for Overweight and Obesity Management) and BLOSSOM (Behavioral modification and LOrcaserin Second Study for Obesity Management), evaluated nearly 7,200 patients treated for up to two years. In both trials, lorcaserin was well tolerated and produced statistically significant weight loss.

53.    Also on August 6, 2010, the Company conducted a conference call with investors. During the conference call, the following statements were made:

**Phil Nadeau** - *Cowen & Co. - Analyst*

Good afternoon and thanks for taking my questions. My first is on the FDA panel, as it's somewhat less than 45 days before the panel, I'm just curious whether the FDA has indicated to you what is likely to be discussed or given you any idea of what you should prepare for September 16?

**Jack Lief** - *Arena Pharmaceuticals - Chairman, President, CEO*

21

CLASS ACTION COMPLAINT
Case No. _____

1    Bill, do you want to answer that question?

2

3    **Bill Shanahan** - *Arena Pharmaceuticals - SVP, Chief Medical Officer*

4    Yes, they have not. And typically don't, so –

5    **Phil Nadeau** - *Cowen & Co. - Analyst*

6    Okay. Can you maybe give us some idea of what you think the issues could be? Or where
     you are focusing your preparation?
7

8    **Bill Shanahan** - *Arena Pharmaceuticals - SVP, Chief Medical Officer*

9    Well, we're not expecting any surprises associated with the panel. Obviously we will
     present our view of lorcaserin, and the FDA will present their view. I think the views will
     overlap substantially, and I look forward to a very positive panel. Christy, you want
10

11   to -- anything to add to that?

12   **Christy Anderson** - *Arena Pharmaceuticals - VP of Clinical Development*

13   I agree with what Jack said. Obviously, we've always said that the primary focus would be
     on safety, and we are well prepared to thoroughly address the safety issues, or the safety
     data, as well as the efficacy data with the panel.
14

15         54.    On August 9, 2010, the Company filed its quarterly report with the SEC on Form

16   10-Q for the period ended June 30, 2010. The 10-Q was signed by Defendants Lief and Hoffman,

17   stated, in part, the following:

18   **OVERVIEW AND RECENT DEVELOPMENTS**

19   Our most advanced drug candidate, lorcaserin hydrochloride or lorcaserin, is intended for
     weight management and has completed a pivotal Phase 3 clinical trial program. We have
20   filed a New Drug Application, or NDA, for lorcaserin with the US Food and Drug
     Administration, or FDA. The FDA has assigned a Prescription Drug User Fee Act, or
21   PDUFA, date of October 22, 2010 for the review of the lorcaserin NDA, and scheduled an
     Endocrinologic and Metabolic Drugs Advisory Committee meeting on September 16, 2010
22   as part of such review.

23         *      *      *

24   **The results of preclinical studies and completed clinical trials are not necessarily
     predictive of future results, and our current drug candidates may not have favorable**
25   **results in later studies or trials.**

26   Preclinical studies and Phase 1 and Phase 2 clinical trials are not primarily designed to test
     the efficacy of a drug candidate, but rather to test safety, to study pharmacokinetics and
27   pharmacodynamics, and to understand the drug candidate's side effects at various doses and
     schedules. To date, long-term safety and efficacy have not yet been demonstrated in clinical
28   trials for any of our drug candidates, except lorcaserin.

22                    CLASS ACTION COMPLAINT
                      Case No. _____

55.     The statements referenced in ¶¶ 31-54 were materially false and/or misleading because they misrepresented and failed to disclose that certain preclinical studies of locaserin found that the drug caused certain cancers in rats.

## VI.     THE TRUTH BEGINS TO EMERGE

56.     On September 14, 2010, the FDA disclosed a Briefing Document titled *NDA 22529 Lorqess (lorcaserin hydrochloride) Tablets, 10 mg Sponsor: Arena Pharmaceuticals Advisory Committee – September 16, 2010.* The Briefing Document disclosed to investors that lorcaserin caused cancer in rats treated with lorcaserin.

57.     On September 14, 2010, Arena shares declined from a close on September 13, 2010 of $6.85 per share, to close at $4.13 per share, a decline of $2.71 per share or approximately 40%.

58.     On September 16, 2010, trading of Arena stock was halted, pending the outcome of the advisory panel hearing.

59.     Also on September 16, 2010, the *Wall Street Journal* reported that the FDA advisory panel rejected lorcaserin.

60.     On September 17, 2010, Arena shares declined $1.99 per share or approximately 47%

## VII.     ADDITIONAL SCIENTER ALLEGATIONS

61.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Arena, their control over, and/or receipt and/or modification of Arena's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Arena, participated in the fraudulent scheme alleged herein.

62.     Defendants knew or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent

23

CLASS ACTION COMPLAINT
Case No. _____

scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.  On a conference call with analysts after the FDA panel rejected lorcaserin due to safety concerns, Defendant Lief stated "when we learned of the data, we promptly discussed it with the FDA . . . ."  When an analyst asked if the rat data was ever made available to the public prior to the release of the FDA Briefing Document, Defendant Lief replied "we did not, and still do not believe that the data's relevant to humans and, as such, did not believe it was material to investors."

63.    Defendants had the motive and opportunity to perpetrate the fraudulent scheme and course of business described herein because the Individual Defendants were the most senior officers of Arena, issued statements and press releases on behalf of Arena and had the opportunity to commit the fraud alleged herein.

## VIII.    LOSS CAUSATION/ECONOMIC LOSS

64.    During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated Arena's stock price and operated as a fraud or deceit on Class Period purchasers of Arena's common stock by misrepresenting the Company's business prospects.  Defendants achieved this by making positive statements about lorcaserin while they knew or recklessly disregarded that there were material safety issues with the drug.  Later, however, when defendants' prior misrepresentations were disclosed and became apparent to the market, the price of Arena's common stock fell precipitously as the prior artificial inflation came out of Arena's stock price. As a result of their purchases of Arena common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, i.e., damages under the federal securities laws.

## IX.    FRAUD-ON-THE-MARKET DOCTRINE

65.    At all relevant times, the market for Arena's securities was an efficient market for the following reasons, among others:

(a)    The Company's common stock was actively traded on the NASDAQ in a highly efficient market;

CLASS ACTION COMPLAINT
Case No. _____

(b)   As a regulated issuer, the Company filed periodic public reports with the SEC;

(c)   The Company was covered regularly by securities analysts; and

(d)   The Company regularly issued press releases which were carried by national news wires.   Each of these releases was publicly available and entered the public marketplace.

66.   As a result, the market for the Company's securities promptly digested current information with respect to Arena from all publicly available sources and reflected such information in the price of the Company's securities.  Under these circumstances, all purchasers of the Company's securities during the Class Period suffered similar injury through their purchase of the securities of Arena at artificially inflated prices and a presumption of reliance applies.

## X.   NO SAFE HARBOR

67.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Arena who knew that those statements were false when made.

CLASS ACTION COMPLAINT
Case No. _____

## FIRST CLAIM FOR RELIEF

### For Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder Against All Defendants

68.     Plaintiff incorporates ¶¶ 1-67 by reference.

69.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately recklessly disregarded were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

70.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Arena securities during the Class Period.

71.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Arena's common stock. Plaintiff and the Class would not have purchased Arena common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

72.     As a direct and proximate result of these defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Arena common stock during the Class Period.

CLASS ACTION COMPLAINT
Case No. _____

## SECOND CLAIM FOR RELIEF

### For Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

73. Plaintiff incorporates ¶¶ 1-67 by reference.

74. The Individual Defendants acted as controlling persons of Arena within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

75. In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the·same.

76. As set forth above, Arena and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions each as a controlling person, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Arena's and the Individual Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

CLASS ACTION COMPLAINT
Case No. _____

**THIRD CLAIM FOR RELIEF**

**Violations of Section 11 of the Securities Act Against Arena and
Defendants Lief, Behar and Hoffman**

77.     Plaintiff repeats and realleges each and every allegation contained above, except for any allegations sounding in fraud or intentional or reckless misconduct.

78.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against Arena and Defendants Lief, Behar and Hoffman.

79.     The each of the prospectus supplements and registration statements alleged above were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

80.     Arena is the issuer. As issuer of the shares, Arena is strictly liable to Plaintiff and to the members of the Class who purchased pursuant and/or traceable to the registration statements and prospectus supplement for the materially untrue statements and omissions alleged herein.

81.     Defendants Lief, Behar and Hoffman were directors of Arena and signed the registration statements or authorized them to be signed on their behalf and were responsible for the contents and dissemination of the registration statements.

82.     By reasons of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, Section 11 of the 1933 Act.

83.     Plaintiff and the Class purchased Arena shares pursuant and/or traceable to the registration statements and prospectus supplements and sustained damages thereby. The value of Arena shares has declined substantially subsequent to and due to defendants' violations.

84.     At the time of their purchases of Arena shares, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered each of those facts prior to September 14, 2010.

85.     This claim was brought within the applicable statute of limitations.

CLASS ACTION COMPLAINT
Case No. _____

1

**FOURTH CLAIM FOR RELIEF**

2

**Violations of Section 15 of the Securities Act**
**Against Defendants Lief, Behar and Hoffman**

3

4          86.     Plaintiff repeats and realleges each and every allegation contained above except

5     for any allegations sounding in fraud or intentional or reckless misconduct.

6          87.     This Count is brought pursuant to §15 of the Securities Act against Defendants

7     Lief, Behar and Hoffman.

8          88.     Defendants Lief, Behar and Hoffman were each a control person of Arena by

9     virtue of his position as a director and/or senior officer of Arena. Defendants Lief, Behar and

10    Hoffman each had a series of direct and/or indirect business and/or personal relationships with

11    other directors and/or officers and/or major shareholders of Arena.

12         89.     As a control person of Arena, Defendants Lief, Behar and Hoffman are liable

13    jointly and severally with and to the same extent as Arena for its violation of Sections 11 of the

14    Securities Act.

15

**PRAYER FOR RELIEF**

16         WHEREFORE, Plaintiff prays for judgment as follows: declaring this action to be a proper

17    class action; awarding rescission and/or other damages, including interest; awarding reasonable

18    costs, including attorneys' fees; and such equitable/injunctive relief as the Court may deem proper.

19

**JURY DEMAND**

20         Plaintiff demands a trial by jury.

21    DATED:  September 20, 2010              KAPLAN FOX & KILSHEIMER LLP

22

23                                     By:  *Laurence D. King/aaaa*

24                                          Laurence D. King
                                            KAPLAN FOX & KILSHEIMER LLP

25                                          350 Sansome Street, Suite 400
                                            San Francisco, CA 94104

26                                          Telephone:  415-772-4700
                                            Facsimile:  415-772-4707

27                                          lking@kaplanfox.com

28

---

29                                          CLASS ACTION COMPLAINT
                                            Case No. _____

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jeffrey P. Campisi
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
jcampisi@kaplanfox.com

Counsel for Plaintiff

30

CLASS ACTION COMPLAINT
Case No. _____

# KAPLAN*FOX*

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, Todd Schueneman, hereby certify and swear as follows:

1. I have reviewed the attached Complaint against Arena Pharmaceuticals, Inc. alleging violations of the securities laws and authorize its filing;

2. I am willing to serve as a representative party on behalf of a class, or to be a member of a group representing a class, including providing testimony at deposition and trial, if necessary;

3. I have not within the 3-year period preceding the date hereof sought to serve, or served, as a representative party on behalf of a class in an action brought under the federal securities laws, unless noted hereafter:

The following is a description of my transactions during the class period specified in the Complaint in the common stock of Arena Pharmaceuticals:

| Date | Symbol | Description | Commission/Fees | Interest | Amount | |
|---|---|---|---|---|---|---|
| 7/30/2010 | ARNA | BOUGHT 2000 SHARES OF ARNA AT $7.7298 | ($7.00) | $0.00 | ($15,466.80) | ☐ |
| 7/19/2010 | ARNA | SOLD 830 SHARES OF ARNA AT $5.18 | ($7.08) | $0.00 | $4,292.32 | ☐ |
| 7/19/2010 | ARNA | BOUGHT 30 SHARES OF ARNA AT $5.11 | $0.00 | $0.00 | ($153.30) | ☐ |
| 7/19/2010 | ARNA | BOUGHT 700 SHARES OF ARNA AT $5.11 | ($7.00) | $0.00 | ($3,584.00) | ☐ |
| 7/19/2010 | ARNA | BOUGHT 100 SHARES OF ARNA AT $5.11 | $0.00 | $0.00 | ($511.00) | ☐ |
| 9/28/2009 | ARNA | SOLD 500 SHARES OF ARNA AT $4.57 | ($7.06) | $0.00 | $2,277.94 | ☐ |

| Date | | | | | | |
|---|---|---|---|---|---|---|
| 9/28/2009 | ARNA | SOLD 237 SHARES OF ARNA AT $4.57 | ($0.03) | $0.00 | $1,083.06 | □ |
| 9/28/2009 | ARNA | SOLD 46 SHARES OF ARNA AT $4.57 | ($0.01) | $0.00 | $210.21 | □ |
| 9/28/2009 | ARNA | SOLD 600 SHARES OF ARNA AT $4.57 | ($0.08) | $0.00 | $2,741.92 | □ |
| 9/28/2009 | ARNA | SOLD 1000 SHARES OF ARNA AT $4.57 | ($0.12) | $0.00 | $4,569.88 | □ |
| 9/28/2009 | ARNA | SOLD 267 SHARES OF ARNA AT $4.57 | ($0.04) | $0.00 | $1,220.15 | □ |
| 9/18/2009 | ARNA | BOUGHT 150 SHARES OF ARNA AT $5.7099 | ($7.00) | $0.00 | ($863.49) | □ |
| 9/17/2009 | ARNA | BOUGHT 900 SHARES OF ARNA AT $6.55 | $0.00 | $0.00 | ($5,895.00) | □ |
| 9/17/2009 | ARNA | BOUGHT 1600 SHARES OF ARNA AT $6.54 | ($7.00) | $0.00 | ($10,471.00) | □ |

4. I did not purchase common stock of Arena Pharmaceuticals, Inc. at the direction of my counsel or in order to participate in any private action under the federal securities laws;

5. I will not accept any payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Todd Schueneman

Date: September 17, 2010

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**BY FAX**

2010 SEP 20  PM 3: 41

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Todd Schueneman, on behalf of himself and all others similarly situated, | Arena Pharmaceuticals, Inc., Jack Lief, Robert E. Hoffman, Dominic P. Behan, William R. Shanahan, Christy Anderson |

**(b)** County of Residence of First Listed Plaintiff   **Waukesha County**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.
DEPUTY

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Laurence D. King, Kaplan Fox & Kilsheimer LLP, 350 Sansome St., Ste. 400, SF CA 94104 tel. 415-772-4700

Attorneys (If Known)

**'10 CV 1959    L    BLM**

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. Secs. 77k and 77o ;15 U.S.C. Secs. 78j(b) and 78t(a); Private Sec. Litig. Reform Act
Brief description of cause:
Class Action Complaint for Violations of the Securities Laws; Private Sec. Litig. Reform Act

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE
09/20/2010

SIGNATURE OF ATTORNEY OF RECORD
Laurence D. King

---

**FOR OFFICE USE ONLY**

RECEIPT #  18187    AMOUNT  $355    9/20/10 DY    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____



ORIGINAL

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS018187
Cashier ID: bhartman
Transaction Date: 09/20/2010
Payer Name: JANNEY AND JANNEY ATTY. SVC.
----------------------------------
CIVIL FILING FEE
 For: SCHUENEMAN V ARENA PHARM
 Case/Party: D-CAS-3-10-CV-001959-001
 Amount:        $350.00
----------------------------------
CHECK
 Check/Money Order Num: 300933
 Amt Tendered:  $350.00
----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```