# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD SCHUENEMAN, et al.,<br><br>　　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>ARENA PHARMACEUTICALS, INC., et al.,<br><br>　　　　　　　　　　　　　Defendants. | Case No.:  10cv1959-CAB (BLM)<br><br>**ORDER DENYING WITHOUT PREJUDICE LEAD PLAINTIFF'S EX PARTE APPLICATION TO MODIFY THE SCHEDULING ORDER REGULATING DISCOVERY AND OTHER PRETRIAL PROCEEDINGS**<br><br>**[ECF No. 128]** |

On August 15, 2017, Lead Plaintiff filed an *ex parte* Application to Modify the Scheduling Order Regulating Discovery and Other Pretrial Proceedings.  ECF No. 128.  Lead Plaintiff requests the Court: (1) require Defendants to complete their document production by September 15, 2017, and require them to produce a privilege log one week after each production, (2) extend all unexpired deadlines by four months, and (3) increase the number of depositions from 10 per side to 25 fact-witness depositions per side, plus expert depositions, or alternatively, set 150 fact-witness deposition hours per side, plus expert depositions.  ECF No. 128-1 at 1.  On August 16, 2017, Defendants opposed each of Lead Plaintiff's requests and argued that Lead Plaintiff's *ex parte* application is procedurally improper.  ECF No. 129.  For the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** Lead Plaintiff's motion.

Defendants argue that Lead Plaintiff's *ex parte* application is procedurally improper.  ECF

No. 129 at 8. In support, Defendants explain that *ex parte* requests are justified only in rare and limited circumstances not present in the instant motion. Id.

> Legitimate *ex parte* motions are limited because:
> *ex parte* applications contravene the structure and spirit of the Federal Rules of Civil Procedure . . . . [N]oticed motions should be the rule and not the exception. Timetables for the submission of responding papers and for the setting of hearings are intended to provide a framework for the fair, orderly, and efficient resolution of disputes. *Ex parte* applications throw the system out of whack. They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel, who are required to make a hurried response under pressure . . . .

In re Intermagnetics America, Inc., 101 B.R 191, 193 (C.D. Cal. 1989) (footnote omitted). When an *ex parte* application is filed, "[t]he judge drops everything except other urgent matters to study the papers. It is assumed that the tomatoes are about to spoil or the yacht is about to leave the jurisdiction and that all will be lost unless immediate action is taken. Other litigants are relegated to a secondary priority." Mission Power Engineering Co. v. Continental Cas. Co., 883 F. Supp. 488, 491-92 (C.D. Cal. 1995).

As a result, *ex parte* applications or motions are "justified only when (1) there is a threat of immediate or irreparable injury; (2) there is danger that notice to the other party may result in the destruction of evidence or the party's flight; or (3) the party seeks a routine procedural order that cannot be obtained through a regularly noticed motion (i.e., to file an overlong brief or shorten the time within which a motion may be brought)." Horne v. Wells Fargo Bank, N.A., 969 F. Supp. 2d 1203, 1205 (C.D. Cal. 2013).

Lead Plaintiff does not establish a basis for giving the application e*x parte* preference and bypassing the regular noticed motion procedure. See ECF No. 128-1; Clark v. Time Warner Cable, 2007 WL 1334965, at *1 (C.D. Cal. May 3, 2007). Lead Plaintiff's motion seeks to continue all dates in the operative Scheduling Order by four months, require Defendants to complete document production by September 15, 2017, and expand the number of depositions permitted per party. See ECF No. 128-1. The appropriate procedure for accomplishing Lead Plaintiff's goal was to file a regularly noticed motion to modify the scheduling order and expand the

number of depositions and a regularly noticed motion to compel Defendants' document productions by September 15, 2017. Only after filing those motions could Lead Plaintiff file an *ex parte* application to shorten the time for the motion to be brought. See Horne, 969 F. Supp. 2d at 1205 (citing Mission Power Engineering Co., 883 F. Supp. at 490) (explaining that *ex parte* applications are permissible where the party seeks a routine procedural order that cannot be obtained through a regularly noticed motion, i.e., to shorten the time within which a motion may be brought).

Instead, Lead Plaintiff has filed an *ex parte* application to modify the Scheduling Order, expand the number of depositions permitted per party, and require Defendants to complete document production by September 15, 2017. ECF No. 128-1. These motions are subject to the regular notice requirements of the Federal Rules of Civil Procedure. The Court advises Lead Plaintiff "that filing an *ex parte* motion . . . is the forensic equivalent of standing in a crowded theater and shouting, "Fire!" There had better be a fire." Mission Power Engineering Co., 883 F. Supp. at 492. Here, there is no fire. Accordingly, the Court **DENIES WITHOUT PREJUDICE** Lead Plaintiff's procedurally improper *ex parte* application.

Even if the Court were to consider Lead Plaintiff's *ex parte* application, the Court would find each of Lead Plaintiff's requests premature. Lead Plaintiff proposes to extend every unexpired deadline in the Court's May 2, 2017, Scheduling Order [ECF No. 106 ("Scheduling Order")] by four months and to require Defendants to complete document production by September 15, 2017. ECF No. 128-1 at 11-15.

Once a Rule 16 scheduling order is issued, dates set forth therein may be modified only "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Rule 16 good cause standard focuses on the "reasonable diligence" of the moving party. Noyes v. Kelly Servs., 488 F.3d 1163, 1174 n.6 (9th Cir. 2007); Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000) (stating Rule 16(b) scheduling order may be modified for "good cause" based primarily on diligence of moving party). Essentially, "the focus of the inquiry is upon the moving party's reasons for seeking modification." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). However, a court also may consider the "existence or degree of prejudice

to the party opposing modification . . . ." Id.

Lead Plaintiff contends that the discovery deadlines should be extended by four months because Defendants intend to complete document production six weeks before the fact-discovery deadline and that amount of time is insufficient to review the documents, determine whether objections are necessary, or resolve discovery disputes. ECF No. 128-1 at 7-8. This is premature because document production is not complete and Lead Plaintiff does not yet know whether he will have sufficient time to review the documents, whether any objections will be required, or whether any discovery disputes will arise. Lead Plaintiff's request to extend the deadlines set forth in the Scheduling Order and to require Defendants to complete production by September 15, 2017 is therefore premature. If after document production is complete, Lead Plaintiff still believes he cannot comply with the discovery cut-off deadline, he may then move to continue that deadline to a later date.

Lead Plaintiff also argues that the number of depositions should be increased from 10 to 25 fact-witness depositions per side, plus expert depositions, or, in the alternative, 150 fact-witness deposition hours per side, plus expert depositions. Id. at 17.

A party may take up to ten depositions without obtaining leave of the court. Fed. R. Civ. P. 30(a)(2)(A). Rule 30(a)(2)(A) contemplates that a party has already taken ten depositions before seeking leave of court for additional depositions. As such, courts generally will not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right under Rule 30(a)(2)(A). Once those depositions are exhausted, the party seeking leave to take additional depositions must make a particularized showing of the need for extra depositions. Osborne v. Billings Clinic, 2015 WL 150252, at *2 (D. Mont. Jan. 12, 2015).

Lead Plaintiff has not presented good cause at this time to take more than 10 depositions. First, Lead Plaintiff brings this motion before he has taken any depositions. See ECF No. 129 at 11-12 (Defendants state that Plaintiff has not even scheduled a single deposition, and therefore, cannot possibly know what information he needs but cannot obtain through the available 10 depositions.); see also ECF No. 128-1 at 14 (Lead Plaintiff states that "depositions cannot be

4

taken, let alone be scheduled, until Defendants have completed their document production."). As such, Lead Plaintiff does not know what information he will obtain during depositions and what important information he may be unable to obtain. Second, because no depositions have been taken yet, Lead Plaintiff cannot make a particularized showing for why additional depositions are necessary or the number of additional depositions that may be required. Accordingly, the Court cannot determine that the issues in this case merit an increase in the number of permitted depositions at this time.

For the reasons stated herein, the Court **DENIES WITHOUT PREJUDICE** Lead Plaintiff's *Ex Parte* Application to Modify the Scheduling Order Regulating Discovery and Other Pretrial Proceedings.

**IT IS SO ORDERED**.

Dated: 8/21/2017

Hon. Barbara L. Major
United States Magistrate Judge