UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD SCHUENEMAN et al., <br><br> Plaintiffs, <br><br> v. <br><br> ARENA PHARMACEUTICALS, INC. et al., <br><br> Defendants. | Case No.: 3:10-CV-01959-CAB-(BLM) <br><br> **FINAL APPROVAL OF CLASS SETTLEMENT AND AWARDS OF ATTORNEYS' FEES, COSTS AND EXPENSES** <br> **[Doc. No. 158, 159]** |

This matter is before the Court on Lead Plaintiff's unopposed motion for final approval of class action settlement and Lead Counsel's motion for an award of attorneys' fees, costs and expenses. [Doc. Nos. 158, 159.] The Court held a hearing on the motions on April 12, 2018. As discussed below, the motion for final approval is granted, and the motion for attorneys' fees, costs and expenses is granted in part.

**I. Background**

This putative class action lawsuit began on September 20, 2010,[1] when a complaint was filed alleging various violations of the Securities Exchange Act of 1934 ("Exchange

---

[1] This is the lead case of a consolidated class action that includes Case Nos. 10cv1961, 10cv1977, 10cv1984, 10cv2026, 10cv2086, and 10cv2335.

Act") and the Securities Act of 1933 (the "Securities Act"). On November 1, 2011, Lead Plaintiff filed a Consolidated Amended Class Action Complaint for violations of the federal securities laws that was subsequently amended on May 13, 2013. [Doc. Nos. 43, 59.]

On November 7, 2017, after over seven years of pending litigation, including an appeal to the Ninth Circuit, the parties notified the Court that they had reached a settlement. [Doc. Nos. 152, 153.]

The Stipulation and Agreement of Settlement ("Settlement") provides for settlement and full release of all claims against Defendants[2] for securities fraud violations. It authorizes a recovery of $24,000,000, consisting of $12,025,000 in cash and Arena common stock to be issued with a value of $11,975,000 ("Settlement Shares")[3]. [Doc. No. 154 at ¶ 1.24.] The Settlement defines the class as "all Persons who purchased Arena common stock between March 17, 2008 and January 27, 2011, inclusive, and were damaged thereby." [Doc. No. 154 at ¶ 1.26.] The average distribution is estimated to be $0.13 per damaged share before deduction of Court-approved fees and expenses. [Doc. No. 160-2 at 9[4].] The Net Settlement Fund shall be distributed to Authorized Claimants as proscribed by the Plan of Allocation, with each claimant's share of the Net Settlement Fund being based upon the recognized loss formula described in the Notice [Doc. No. 154 at ¶ 1.20; Doc. No. 160-2 at 21-26.] Additionally, the settlement authorizes: (1) payment of up to $250,000.00 in class administrator fees; (2) the payment of taxes and tax expense; (3) a fee and expense award to lead counsel; and (4) payment of a class representative award. [Doc. No. 154 at ¶¶ 3.11, 6.4, 7.1, 7.2.] The separately filed motion for attorneys' fees informs that Lead Counsel is seeking 30 percent of the cash consideration and 30 percent

---

[2] The "Defendants" are Arena Pharmaceuticals, Inc. (the "Company"), Jack Lief, Robert E. Hoffman, Dominic P. Behan, William R. Shanahan, and Christy Anderson.
[3] Arena has the option to pay all or part of the Settlement Shares in cash at the time Arena is to issue the Settlement Shares. [*See* Doc. No. 152, ¶ 3.4.]
[4] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

of the Settlement Shares, reimbursement of $251,213.10 in litigation expenses, and a $17,5000 representative award for Lead Plaintiff. [Doc. No. 159.]

On November 7, 2017, Lead Plaintiff filed an unopposed motion for preliminary approval of the settlement. [Doc. No. 153.] The Court granted the motion and preliminarily approved the settlement on November 20, 2017. [Doc. No. 156.] The preliminary approval order set a final approval hearing for April 12, 2018. The final approval hearing took place as scheduled. Counsel for both parties attended. No class members filed objections to the settlement, and no class members attended the hearing. However, two class member requested exclusion from the settlement.

## II. Final Approval of Settlement

### A. Certification of the Settlement Class

The settlement here envisions certification of a class of "all Persons who purchased Arena common stock between March 17, 2008 and January 27, 2011, inclusive, and were damaged thereby." [Doc. No. 154 at ¶ 1.26.]

When considering a motion for approval of a Rule 23 class action the Court must perform the threshold task of certifying the class. *See generally Millan v. Cascade Water Servs. Inc.,* 310 F.R.D. 593, 602-607 (E.D. Cal. 2015). The Court must "ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Additionally, the Court must determine whether class counsel is adequate and whether "the action is maintainable under Rule 23(b)(1), (2), or (3)." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (quoting *Amchen Prod. v. Windsor*, 521 U.S. 591, 614 (1997)).

#### 1. Numerosity

This requirement is satisfied if the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class greater than forty members often satisfies this requirement. . . ." *Waller v. Hewlett-Packard Co.,* 295 F.R.D. 472, 482 (S.D.

Cal. 2013) (citing *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008)). Here, notice packets were mailed to 139,542 potential class members. Joinder of all these potential plaintiffs would be impracticable. Accordingly, this requirement has been met.

### 2. Commonality

This requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "To satisfy this commonality requirement, plaintiffs need only point to a single issue common to the class." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009). Here, the commonality requirement is satisfied because all of the class claims involve common questions of law and fact surrounding Defendants' purported violations of the federal securities laws as evidenced by their alleged failure to disclose material facts regarding the development of the weight loss drug Lorcaserin to investors and by the making of false and misleading statements about the drug.

### 3. Typicality

This requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotations and citation omitted). Here, the typicality requirement is satisfied because the claims of lead Plaintiff and the class are the same. The wrongful conduct alleged in the complaint is not unique to the class representative, and the damages to the class members, if any, are similar insofar as they relate to violations of the federal securities laws.

### 4. Adequacy of Class Representative and Class Counsel

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires the

Court address two questions: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *In re Mego*, 213 F.3d at 462. A court certifying a class must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* at 23(g)(1)(B). Ultimately, when only one applicant seeks appointment as class counsel, the court must determine that "[c]lass counsel . . . fairly and adequately represent the interests of the class." *Id.* at 23(g)(4).

Here, there is no obvious conflict between Schwartz's interests and those of the class members. Similarly, the Court is unaware of any reason that would warrant altering its earlier determination that Lead Counsel can adequately represent the interest of the class. Furthermore, no Class Member has filed an objection challenging the adequacy of the representative parties. Accordingly, the Court finds this element satisfied for the purposes of certification of the settlement class.

### 5. Predominance and Superiority

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. "Rule 23 (b)(3) permits a party to maintain a class action if . . . the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Conn. Ret. Plans & Trust Funds v. Amgen Inc.,* 660 F.3d 1170, 1173 (9th Cir. 2011), *aff'd*, 133 S. Ct. 1184 (2013) (citing Fed. R. Civ. P. 23(b)(3)). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation." *Hanlon*, 150 F.3d at 1022-23 (quoting *Amchen Prods, Inc.*, 521 U.S. at 623). It requires an examination into whether there are "legal or factual questions that qualify each class member's case as a genuine controversy." *Id.* The superiority inquiry "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Id.* at 123.

Here, all of the class members were allegedly subject to Defendants' purported federal securities laws violations. The legal and factual questions common to each class member's claim predominate over any questions affecting individual class members. The relatively limited potential recovery for the class members as compared with the costs litigating the claims also support the conclusion that a class action is superior to other methods for adjudicating this controversy. Accordingly, the Court finds that the predominance and superiority inquiries have been satisfied.

In light of the foregoing, the Court conditionally certifies the Rule 23 class for the purposes of settlement.

**B. Legal Standard for Final Approval of Class Settlement**

Where, as here, a settlement is reached prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class, therefore "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Pro. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. The Rule also "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. In making this determination the Court is required to "evaluate the fairness of a settlement as a whole, rather than assessing its individual

6

3:10-CV-01959-CAB-(BLM)

components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). Because a "settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon,* 150 F.3d at 1027.

In assessing a settlement proposal the district court is required to balance a number of factors, namely:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026.

**C. Analysis**

**1. Adequacy of Notice**

The Court approved notice of this class action and proposed settlement in the Preliminary Approval Order. The claims administrator distributed 139,542 Notice Packets to potential class members that included A Proof of Claim and Release form. The Notice advised the Class of the terms of the Settlement, of their rights: (1) to receive their share of the Settlement by submitting a claim form; (2) to object to the Settlement and to appear at the Final Approval Hearing, (3) to request exclusion from the Settlement; (4) the manner and timing for doing any of these acts; (5) the date and time set for the final approval hearing; and (6) the binding effect of the judgment if they chose to do nothing. Adequate periods of time were provided for each of these procedures. No class members objected to the settlement or the adequacy of the Notice, and only two class member requested exclusion from the class. Accordingly, the Court finds that the Class received adequate notice.

### 2. Strength of Plaintiffs' Case; Risk of Further Litigation; and Risk of Maintaining Class Action Status

As a result of the preferable nature of Settlement over the uncertainties, expense and length of litigation "when assessing the strength of plaintiff's case, the court does not reach any ultimate conclusions regarding the contested issues of fact and the law that underlie the merits of this litigation." *Four in One Co. v. S.K. Foods, L.P.,* No. 2:08-CV-3017 KJM EFB, 2014 WL 4078238, at *7 (E.D. Cal. Aug. 14, 2014) (internal quotations omitted). Similarly, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Here, the Settlement has been reached after over seven years of pending litigation, including an appeal to the Ninth Circuit. Plaintiff's claims at issue in the settlement involve disputed legal issues. The inherent risk of further litigation in this matter is known to all involved with the case. Proceeding with this case presents very real risks regarding class certification, summary judgment, *Daubert* and *in limine* motions, proving the necessary scienter, reliance and damages if the case proceeded to trial, and a possible unfavorable decision on the merits. *See Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *6 (C.D. Cal. July 21, 2008) ("Because both parties face extended, expensive future litigation, and because both faced the very real possibility that they would not prevail, this factor supports approval of the settlement."). While Plaintiff believes in the merits of his case, Defendants have strong defenses to class liability, reliance and damages determinations, and there is no guarantee that Plaintiff will prevail. The Court finds these risks weigh in favor of settlement.

### 3. The Amount Offered in Settlement

"Basic to [the process of deciding whether a proposed settlement is fair, reasonable and adequate] * * * is the need to compare the terms of the compromise with the likely rewards of litigation." *In re TD Ameritrade Accountholder Litig.*, 226 F.R.D. 418, 422 (N.D. Cal. 2009) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry*

*Inc. v. Anderson*, 390 U.S. 414, 424-25, (1968)).  However, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

Here, the Settlement authorizes a recovery of $24,000,000, less Court-awarded fees and expenses and the costs of administering the Settlement.[5]  The average distribution is estimated to be $0.13 per damaged share before deduction of Court-approved fees and expenses.  Furthermore, the Company is currently experiencing a financial downturn and has limited insurance coverage, meaning that continued litigation could result in there being little to no money being available down the road to satisfy any later judgment.  In light of the risks associated with continuing this litigation, the Court finds that a payout in this amount appears reasonable and weighs in favor of approval of the settlement.

### 4. Extent of Discovery and the Stage of the Proceedings

When assessing a settlement courts focus on whether the "parties have sufficient information to make an informed decision about settlement." *In re Mego*, 213 F.3d at 459 (quoting *Linney*, 151 F.3d at 1239).  In the context of class action settlements extensive "formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Linney,* 151 F.3d at 1239 (internal quotation marks and citation omitted).

Here, the Settlement has been negotiated after years of pending litigation and meaningful discovery has occurred.  Counsel has litigated this action through three rounds of motions to dismiss and a successful appeal, engaged in investigation, research and analysis of the class claims, participated in an arm's-length mediation session, and obtained

---

[5] The Settlement calls for the payment of $250,000.00 in class administrator fees to the Claims Administrator.  The Court has reviewed the affidavit of Jennifer M. Bareither detailing the work performed by Garden City Group LLC., and finds that paying this amount in administrative costs reasonable.  [Doc. No. 60-2.]

ample discovery. This history evidences the parties' significant knowledge regarding the relevant facts, law, and strengths and weaknesses of their claims and defenses. Consequently, the Court finds this factor weighs in favor of approval of the settlement.

### 5. Experience of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citing *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Here, Lead Counsel has provided a declaration detailing their experience in litigating federal class action securities cases. Lead Counsel declares that their support of the Settlement is based on an assessment of the strengths and weaknesses of the case, their extensive experience in litigating class and securities actions, and an assessment of the risks of proceeding with the litigation compared to the certain value of settlement at this time. In light of the foregoing, and according the appropriate weight to the judgment of counsel, the Court finds this factor weighs in favor of the settlement.

### 6. Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members." *Nat'l Rural Telecomm. Coop., Inc.,* 221 F.R.D. at 529 (citations omitted). Here, only two class members have opted out of the class and no objections to the settlement have been received. *Id.* (the absence of a single objection "is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate."). Accordingly, the Court finds this weighs in favor of settlement.

### 7. Other Factors

The Court must also demonstrate that the settlement is "not[] the product of collusion among the negotiating parties." *In re Bluetooth,* 654 F.3d at 947 (quoting *In re Mego,* 213 F.3d at 458) (alteration in original) (providing three examples of signs of collusion, namely (1) counsel receives a disproportionate distribution of the settlement, or counsel is amply rewarded but class members receive no monetary distribution; (2) the presence of a "clear

sailing" arrangement providing for payment of attorneys' fees; and (3) a provision that fees not awarded revert to defendants rather than be added to the class fund.). *See also, Young v. Polo Retail, LLC,* No. C-02-4546 VRW, 2007 WL 951821, *3 (N.D. Cal. Mar. 28, 2007) (adding factors "(9) the procedure by which the settlements were arrived at, see MANUAL FOR COMPLEX LITITGATION (FOURTH) § 21.6 (2004), and (10) the role taken by the plaintiff in that process.").

Here, the parties reached agreement after participating in a day long formal mediation before a neutral third party, former Unties States District Judge Layn. R. Phillips. *See Satchell v. Fed. Express Corp.,* No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is noncollusive."). Judge Phillips has provided a declaration to the Court in support of the Settlement attesting that "the parties' settlement is the product of vigorous and independent advocacy and arm's-length negotiation conducted in good faith." [Doc. No. 160-1 at ¶ 10.] Further, he declares the Settlement "represents a well-reasoned and sound resolution of the highly uncertain litigation and that the result is fair, adequate, reasonable and in the best interests of the Settlement Class." [*Id.* at 2-8, ¶ 12.] Additionally, Lead Counsel is not receiving a disproportionate share of the settlement and the class members will receive monetary compensation, the Stipulation does not contain a clear sailing provision, and any unclaimed funds will either be redistributed to eligible Class Members or donated to the Legal Aid Society of San Diego. Moreover, Lead Counsel represent that the Lead Plaintiff was actively involved in the case, including litigation and settlement. Accordingly, the Court finds these factors weigh in favor of settlement.

### 8. Balancing of the Factors

"Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Service Comm'n of City and Cnty. of S.F.,* 688 F.2d 615, 625 (9th Cir. 1982) (citation omitted). "[It must not be overlooked that voluntary conciliation and settlement are the

preferred means of dispute resolution. This is especially true in complex class action litigation." *Id.* Having considered the relevant factors, the Court finds they all weigh heavily in favor of settlement. As a consequence, the Court finds the settlement fundamentally fair, adequate and reasonable.

### III. Approval of Plan of Allocation

"Approval of a plan of allocation of settlement proceeds in a class action under FRCP 23 is governed by the same standards of review applicable to approval of settlement as a whole: the plan must be fair, reasonable and adequate." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1-2 (N.D. Cal. June 16, 1994) (citing *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992)). *See also In re Heritage Bond Litig.,* No. 02-ML-1475 DT, 2005 WL 1594403 at 11 (C.D. Cal. 2005). The allocation formula used in a plan of allocation "need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (citation omitted). A plan which "fairly treats class members by awarding a pro rata share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue" should be approved as fair and reasonable. *In re MicroStrategy, Inc., Sec, Litig.*, 148 F. Supp. 2d 654, 669 (E.D. Va. 2001) (citation omitted).

Here, the Plan of Allocation (the "Plan") generally treats all class members' losses in the same way and awards a pro rata share to every Authorized Claimant. The Plan provides that the Claims Administrator shall determine each Authorized Claimant's share of the Net Settlement Fund based upon the Recognized Loss formula described in the Notice and calculated in accordance with the "90-day look back" provision of the PSLRA. The calculation of Recognized Loss will depend on several factors, including when and in what amounts the stock was purchased in the Class Period, whether the stocks were sold, and if they were, when they were sold and for what amounts. A Claimant's Recognized Claim shall be the sum of his, her or its Recognized Loss Amounts. The Net Settlement

Fund will be distributed to Authorized Claimants on a pro rata basis based on the relative size of their respective Recognized Claim. Each claimant's Distribution Amount will be calculated by dividing the Authorized Claimant's Recognized Claim by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. If any Authorized Claimant's Distribution Amount is less than $10.00 it will not be included in the calculation and no distribution will be made to such Authorized Claimant. To the extent a Claimant had a market share gain with respect to his, her, or its overall transactions in Arena common stock during the Class Period, the value of Claimant's Recognized Claim shall be Zero. A Claimant's overall market gain or loss during the Class Period shall be determined by the Claims Administrator in accordance with the provisions set forth in the Notice. The Plan also sets forth how any unclaimed distributions or remaining balance in the Net Settlement Fund will be dispersed. Additionally, the Plan was completely disclosed in the 139,542 Notice Packet mailed to potential Class Members and no objections to the Plan have been filed. Furthermore, it has been recommended by Lead Counsel after careful consideration and analysis, and with the assistance of a damages expert[6]. [Doc. No. 160, 43-47.] Accordingly, the Court concludes that the Plan is fair and adequate.

### IV. Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 946. That Defendants agreed in the settlement not to oppose

---

[6] Lead counsel attests that "[t]he Plan of Allocation was created with the assistance of a consulting damages expert, and reflects the assumption that the price of Arena common stock was artificially inflated from March 17, 2008 through September 16, 2010, and from December 22, 2010 through January 27, 2011. The calculations made pursuant to the Plan of Allocation are generally based upon the measure of damages set forth in Section 10(b) of the Exchange and Rule 10b-5 promulgated thereunder by the SEC." [Doc. No. 160 at 44, ¶ 164.]

counsel's request for 30% of the cash consideration and 30% of the Settlement Shares "does not detract from the need carefully to scrutinize the fee award." *Staton v. Boeing Co.,* 327 F.3d 938, 964 (9th Cir. 2003).

When settlement leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the common fund method or the lodestar calculation. *See In re Bluetooth*, 654 F.3d at 944-45 (encourage courts to "guard against an unreasonable result by cross-checking their calculations against a second method."). The Ninth Circuit has:

> established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases. The benchmark percentage should be adjusted, or replaced by a lodestar calculation[7], when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors.

*Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990). When employing their discretion and utilizing the percentage-of-recovery method, federal "courts typically calculate 25% of the [common settlement] fund as the 'benchmark' for a reasonable fee award." *In re Bluetooth*, 654 F.3d at 942. In assessing the reasonableness of the award in common fund percentage award cases, the Ninth Circuit has provided a non-exhaustive list of factors to be used, including:

> the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g. cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015).

---

[7] To calculate the loadstar amount, the district court should "multipl[y] the number of hours reasonable spent in achieving the results obtained by a reasonable hourly rate." *Friend v. Kolodziczak,* 72 F.3d 1386, 1389 (9th Cir. 1995).

Here, Lead Counsel's request for 30% of the cash consideration and 30% of the settlement shares results in a recovery tantamount to $7,200,000.[8] Lead Counsel submits that the award is fair and reasonable in light of the considerable risks associated with the case, the seven years it devoted to pursuing the litigation, the recovery obtained, and the skill and expertise required to prosecute and resolve the claims asserted. Further, Lead Counsel asserts that the Settlement "is a testament to Counsels' hard work, expertise in the harsh realities of federal class action securities litigation, ingenuity and the quality of legal representation." [Doc. No. 159-1 at 11.]

As the Court previously acknowledged, the settlement amount of $24,000,000 confers substantial benefits upon the Settlement Class, particularly in light of the risks associated with continuing this litigation to trial and weighs in favor of the fee amount. Lead Counsel has achieved success in successfully appealing the dismissal order and the litigation as a whole involved some complicated and labor intensive claims and issues which weighs in favor of the award. *See In re Heritage Bond.,* 2005 WL 1594403, at *20 ("the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award.) The experience of Lead Counsel in litigating class actions of this type also support the request. Moreover, the reaction of the Class to the settlement has been positive, with only two class members requesting exclusion, which supports the fee application.

But, while Lead Counsel had responsibility for litigating this case over a seven year period, the Court is mindful of the limited nature of the litigation that occurred in that time period. In terms of actual litigation of the case, from the initial filing in September, 2010, to the dismissal in March, 2014, the case had not proceeded beyond motions to dismiss the complaint. From dismissal of the complaint in March, 2014, to the remand from the appellate court and spread of the mandate in January, 2017, there was no active litigation

---

[8] $3,607,500 (30% of $12,025,000 cash settlement) + $3,592,500 (30% of the Settlement Shares valued at $11,975,000).

15

3:10-CV-01959-CAB-(BLM)

in this matter. Discovery effectively began in May, 2017, and ended in November, 2017, with notice of settlement. No depositions had been taken, the plaintiff had not yet moved for class certification and motions for summary judgment had not been briefed. In light of this, the Court has concerns regarding the reasonableness of awarding Lead Counsel such a high percentage. To cross check the reasonableness of the requested percentage award, the Court considers the loadstar calculation provide by Plaintiff.

In support of their fee request, Counsel has submitted a lodestar calculation. Counsel declares that they have worked an aggregate of 6,678.65 hours on the case, and the calculated lodestar fee on these hours is $3,711,903.[9] Lead Counsel's loadstar calculation results in a multiplier of 1.94. Counsel calculate the lodestar with hourly rates for attorneys from the firms of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), Stris & Maher, and Wolf Haldenstein Adler Freeman & Hertz LLP ("Wolf Haldenstein") ranging from $995 to $350 an hour. Included in the lodestar calculation was work performed by law clerks billed at $230 an hour and paralegal work billed at $155 to $310 hour.[10] In support, Counsel has submitted declaration attesting to the hours worked and billing rates, and the firms' profiles, and attorney biographies. [Doc. Nos. 160, 160-3, 160-4, 160-5.] Counsel assert that "using plaintiffs' counsel's aggregate "lodestar" as a cross check confirms the reasonableness of the requested fee." [Doc. No. 160 at ¶ 190.]

While the Court need not engage in a full-blown lodestar analysis when the primary basis remains the percentage method, the calculation is meant to provide a "useful perspective on the reasonableness of a given percentage award." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Thus, although the Court need not closely

---

[9] It is attested that: (1) the Kaplan Fox firm expended 5703.75 hours on the case, and that the calculated lodestar fee on these hours is $3,150,547.50; Stris & Maher expended 96 hours on the case, and that the calculated lodestar fee on these hours is $555,695.00 [Doc. No. 160-4]; Wolf Haldenstein expended 10 hours on the case, and that the calculated lodestar fee on these hours is $5,660.00 [Doc. No. 160-5].

[10] Paralegals Moonsammy and Weiland are billed at $310 an hour, Weiland at $300, McAndrew and Powley at $275, Gomes at $270, Ng at $235, Hukill at $230, and Rodriguez at $155. At the submitted rates, Kaplan Fox claims a total of $163,382.50 for paralegal services in its lodestar calculation.

scrutinize each claimed attorney-hour some review is required. Here, Counsel bases its loadstar calculation on average hourly rates ranging from $350 to $995 an hour, yet no evidence has been provided demonstrating the reasonableness of these rates. Accordingly, based on its experience and knowledge of prevailing rates in the community, the Court exercises it discretion and finds that the upper echelons of these rates are not reasonable compared to the prevailing market rates in the San Diego community for attorneys of their experience and ability. *See, e.g., Viveros v. Donahue,* CV 10-08593 MMM (Ex), 2013 WL 1224848, at *2 (C.D. Cal. 2013) ("When an applicant fails to meet her burden of establishing the reasonableness of the requested rate, the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community.") (collecting cases). Further, the hourly rates of $270 to $310 Kaplan Fox is submitting for its paralegals is not borne out by the Court's knowledge of the comparable rates of the community or by co-counsel Wolf Haldenstein's submission which sets it paralegal hourly rate at $230 and $210. There is no evidence before the Court that would warrant remunerating the paralegal services of Kaplan Fox at such high rate. *See Robinson v. Chand*, No. Civ. S-05-1080 DFL DAD, 2007 WL 1300450, at *2 (E.D. Cal. May 2, 2007) ("for fees to be reasonable, paralegal work should be billed at an appropriate rate, regardless of the status of the person actually undertaking the work.") Finally, the Court also takes issue with the 6,678.65 hours Counsel asserts they have worked on this case. Aside from including three tables summarizing the number of hours each employee at the firms worked and identifying the employees' hourly rate, no evidence to support the number of hours worked or details regarding the type of work performed by each individual has been provided. Therefore, the Court cannot perform any review of the hours claimed to see if they are reasonable or should be disallowed. Without more evidence to support the number of hours worked and the rate of some of the attorneys and Kaplan Fox support staff, the Court finds the lodestar calculation unreliable and of little help in confirming if the submission is reliable. *See Fernandez,* 2008 WL 8150856, at * 14 (the

loadstar calculation "serves as a point of comparison by which to assess the reasonableness of a percentage award").

In light of the foregoing, the Court finds an award of 15 percent of the common fund more reasonable. *See Spann v. J.C. Penney Corp.,* 211 F. Supp. 3d 1244, 1263 (C.D. Cal. 2016) ("As always, when determining attorneys' fees the district court [is] guided by the fundamental principles that fee awards out of common funds be reasonable under the circumstances.") (quoting *Glass v. UBS Fin. Servs., Inc.,* 2007 WL 221862, at * 14 (N.D. Cal. 2007) *aff'd*, 331 Fed. Appx. 452 (9th Cir. 2009)). Accordingly, the Court awards Lead Counsel attorneys' fees in the amount of 15% of the cash consideration ($1,803,750.00) and 15% of the settlement shares (valued at $1,796,250.00) which results in an award equaling $3,600,000.

**V.     Costs**

Attorneys are entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Lead Counsel asserts that it has incurred $251,313.10 in costs over the course of this litigation but provide very little evidence to support the costs incurred. Defendants do not oppose the costs.

The Court has reviewed the request and finds two particular expense items troubling. Lead Counsel requests reimbursement in the amount of $32,712.33 in "Travel/Meals" and $65,819.00 for payment of "Experts and Consultants," yet the declaration filed in support provides only three sentences in relation to these expenses with no supporting documentation justifying these costs. The Court is unable to ascertain why these excessive expenses were incurred in relation to the Settled Claims and therefore declines to reimburse the monies spent on them. As a consequence, the Court awards $152,781.77[11] in fees.

---

[11] $251,313.10 - $32,712.33 (Travel/meals) - $65,819.00 (Experts and Consultants) = $152,781.77

18

3:10-CV-01959-CAB-(BLM)

## VI. Class Representative Payments.

Although the Private Securities Litigation Reform Act ("PSLRA") requires class representatives share the same recovery in the same proportion as all other members of the class, it also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C, § 78u-4(a)(4).

In the settlement papers, Lead Plaintiff ask for a class representative award of $17,500. Lead Counsel declares that Lead Plaintiff has been actively involved in the litigation of this action and Mr. Schwartz has submitted declaration attesting that he: (1) regularly communicated with Lead Counsel; (2) monitored and oversaw the prosecution of this action and negotiations leading to settlement; (3) reviewed and commented on all significant pleading and briefs filed; (4) consulted with Lead Counsel regarding the retention of experts; participated in discovery; and (5) evaluated and approved the proposed settlement. [Doc. No. 160-6]. However, the Court does not find the $17,500 amount consistent with those typically awarded as incentive payments. *See, e.g., In re Mego,* 213 F.3d at 463 (finding district court did not abuse its discretion in awarding a $5,000 incentive award to the class representatives)*; Rihn v. Acadia Pharm. Inc.,* Case No.: 15-cv-00-575 BTM-DHB (S.D. Cal. Jan. 22, 2018) (approving a $2,500 incentive award to lead plaintiff)*; Retta v. Millennium Products*, Case No. CV15-1801 PSG AJWx, 2017 WL 5479637, at * 14 (C.D. Cal. Aug. 22 2017) (approving an incentive payment of $2,000 for each of class representatives); *In re American Apparel, Inc. S'holder Litig.,* Case No. CV 10-06352 MMM (JCGx), 2014 WL 10212864, at * 33 (C.D. Cal. July 28, 2014) (awarding $6,600 as an incentive award) (collecting cases where class representative awards have been in the $2,000 to $5,000 range). Accordingly, the Court reduces the discretionary incentive award to Lead Plaintiff to $2,000.

## VII. Conclusion

In light of the foregoing, it is hereby **ORDERED** as follows:

1. The Court **GRANTS** final approval of the proposed Settlement and Plan of Allocation [Doc. No. 158];

2. The Court **GRANTS IN PART** Lead Counsel's motion for attorneys' fees, costs and class representative payments [Doc. No. 159];

3. The Court **GRANTS** Lead Counsel attorneys' fees in the amount of 15% of the cash consideration ($1,803,750.00) and 15% of the settlement shares, which results in a fee award equaling $3,600,000, and $152,781.77 in costs from the Settlement fund;

4. The Court **GRANTS** a class representative award of $2,000 to Lead Plaintiff Carl Schwartz to be paid from the settlement fund;

5. The Court **GRANTS** final approval of $250,000 in settlement administration costs to be paid from the settlement fund to Garden City Group, LLC.

6. The two class members who asked to opt out of the settlement are excluded from the class.

7. The Court retains continuing jurisdiction over this settlement solely for the purposes of enforcing the agreement, addressing settlement administration matters, and addressing such post-judgment matters as may be appropriate under Court rules and applicable law.

8. Judgment is hereby entered on the terms set forth above. The Clerk of the Court shall close this case.

It is **SO ORDERED**.

Dated: April 12, 2018

Hon. Cathy Ann Bencivengo
United States District Judge